UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

INTERNATIONAL BUSINESS MACHINES
CORPORATION,

           Plaintiff,

vs.

DAVID L. JOHNSON,

           Defendant.

---

Civil Action No. 09 CIV. 4826

**COMPLAINT**

International Business Machines Corporation ("IBM" or the "Company"), by and through its undersigned attorneys, states as follows:

### Nature of the Action

1.    IBM brings this action to prevent David Johnson, a senior IBM executive with responsibilities for directing IBM's mergers, acquisitions and divestiture strategy, from assuming a senior strategy position at Dell Inc. ("Dell"). By virtue of his responsibilities, Mr. Johnson is in possession of IBM's most highly sensitive confidential strategic information. By taking a senior strategy position with IBM competitor Dell, Mr. Johnson will breach a noncompetition agreement (the "Noncompetition Agreement", a true and correct copy of which is attached hereto as Exhibit A) with, and confidentiality obligations to, IBM.

### Parties

2.    IBM is a corporation organized under the laws of the State of New York with its principal place of business located in Armonk, New York, within the Southern District of New York.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

3.     Upon information and belief, Mr. Johnson is an individual who resides at 9 Stonewall Lane, Ridgefield, CT 06877.

## Jurisdiction and Venue

4.     Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this action because the matter in controversy exceeds the sum of $75,000, exclusive of costs and interest, and there is complete diversity of citizenship between the parties.

5.     Pursuant to 28 U.S.C. § 1391, venue properly lies in this Court because IBM's headquarters and principal place of business are situated within this judicial district, a substantial part of the events giving rise to the claims occurred in this judicial district, and the parties agreed in their Noncompetition Agreement to submit to the exclusive jurisdiction of and venue in the federal and state courts of the State of New York, County of Westchester, for the resolution of all disputes arising under, or relating to, that Agreement.

## Relevant Facts

### IBM

6.     IBM is one of the world's largest technology companies. With approximately 400,000 employees working in locations across the world, IBM is a globally-integrated enterprise that operates in various areas of high technology.

7.     Among the product areas in which IBM competes are enterprise servers and storage, which are highly competitive and characterized by ongoing technological innovation.

### David L. Johnson

8.     Mr. Johnson has been employed by IBM for more than 27 years. For the last 9 years, he has held the position of Vice President of Corporate Development. In this position, Mr. Johnson directs the Company's mergers, acquisitions and divestiture strategy and is in possession of IBM's most highly sensitive confidential strategic information. Mr. Johnson

reports directly to Mark Loughridge, Senior Vice President and Chief Financial Officer of the Company.

9. For the past 9 years, Mr. Johnson has played an active role in all aspects of IBM's strategic planning relating to corporate transactions, including actual and potential acquisitions and dispositions and strategy related thereto. The actual and potential corporate transactions as to which Mr. Johnson has knowledge span the entire range of IBM businesses and product lines.

10. Through his employment, Mr. Johnson has gained access to highly sensitive confidential information that the Company uses in its most sensitive strategic planning relating to the future of the corporation. This strategic planning is integral to the Company's strategy for competition across the range of its businesses, including enterprise servers and storage. The information that Mr. Johnson possesses is among the Company's most competitively sensitive information, is carefully guarded, not made accessible to the public or to IBM's competitors, and is disclosed even to IBM employees on a strict "need to know" basis. It could not be replicated from public sources.

11. Among the highly sensitive information Mr. Johnson possesses is, for example, information regarding where and in what companies and technologies IBM will invest, at what times, with what rates of return, as well as information regarding potential divestitures.

12. In addition, Mr. Johnson has been a member of the Company's elite Integration & Values Team ("I&VT"), a group comprising the 300 senior managers of the Company.

13. The I&VT is charged with addressing the most difficult and important issues facing IBM, such as developing corporate strategy and driving innovation and growth, and I&VT members work with the most sensitive strategic information the Company possesses.

14. In his capacity as a member of the I&VT, Mr. Johnson has gained access to confidential information concerning the Company's strategic plans, marketing plans and long-term business opportunities, including the development status of specific IBM products.

15. The confidential information to which Mr. Johnson has become privy based on employment with the Company and his membership in the I&VT is critical to IBM's competitive success. Such information is carefully guarded, not made accessible to the public or to IBM's competitors, and is disclosed even to IBM employees on a strict "need to know" basis. It could not be replicated from public sources.

### The Noncompetition Agreement

16. In 2005, Mr. Johnson executed the Noncompetition Agreement with the Company.

17. In that agreement, Mr. Johnson agreed that

"during [his] employment with IBM and for one (1) year following the termination of [his] employment . . . . [he] will not directly or indirectly within the 'Restricted Area' (i) 'Engage in or Associate with' (a) any 'Business Enterprise' or (b) any significant competitor or major competitor of the Company."

(Noncompetition Agreement § 1(b).)

18. In the Noncompetition Agreement, "Restricted Area" is defined as "any geographic area in the world for which [he] had job responsibilities during the last twelve (12) months of [his] employment with the Company." (*Id.* § 2(d).)

19. In the Noncompetition Agreement, "Engage in or Associate with" is defined to mean, among other things, acting as an "associate, employee, member, consultant, contractor or otherwise." (*Id.* § 2(c).)

20. In the Noncompetition Agreement, "Business Enterprise" is defined as "any entity that engages in . . . competition with the business units or divisions of the Company in

which you worked at any time during the two (2) year period prior to the termination of your employment." (*Id.* § 2(a).)

21. Mr. Johnson also agreed to nonsolicitation covenants, more specifically that

"during [his] employment with IBM and for one (1) year following the termination of [his] employment . . . . [he] will not directly or indirectly within the 'Restricted Area' . . . solicit, for competitive business purposes, any customer of the Company with which [he was] involved as part of [his] job responsibilities during the last twelve (12) months of [his] employment with the Company."; and

"for the two (2) year period following the termination of [his] employment . . . [he] will not directly or indirectly within the 'Restricted Area,' hire, solicit or make an offer to any employee of the Company to be employed or perform services outside of the Company."

(*Id.* § 1(b).)

22. Additionally, in the Noncompetition Agreement, Mr. Johnson made several important acknowledgments. Among others, Mr. Johnson expressly acknowledged that

"the business in which IBM and its affiliates . . . are engaged is intensely competitive" (*id.* § 1(a));

"[his] employment by IBM has required, and will continue to require, that [he] have access to, and knowledge of, confidential information of the Company, including, but not limited to, certain or all of the Company's methods, information, systems, plans for acquisition or disposition of products, expansion plans, financial status and plans, customer lists, client data, personnel information and trade secrets of the Company, all of which are of vital importance to the success of the Company's business" (*id.*);

"[his] services to the Company are, and will continue to be, extraordinary, special and unique" (*id.*);

"the Company would suffer irreparable harm if [he failed] to comply with [the noncompetition and the nonsolicitation covenants]" (*id.* § 3); and

"the restrictions set forth in [the covenants] are reasonable as to geography, duration and scope" (*id.*).

23. Mr. Johnson has repeatedly confirmed his agreement to the terms of the Noncompetition Agreement in connection with his acceptance of equity grants.

### Mr. Johnson's Decision to Join Dell

24. Recently, Mr. Johnson informed his superiors at IBM that he intends to accept a position at Dell.

25. On information and belief, Mr. Johnson will become Senior Vice President of Strategy at Dell.

26. On information and belief, through his employment at Dell, Mr. Johnson will be in a position to advise Dell regarding competitive strategy, including corporate transactions, and will necessarily rely upon and be in a position to reveal highly confidential IBM information regarding IBM's competitive strategy, including corporate acquisitions.

27. On information and belief, Mr. Johnson's position at Dell will require him to have responsibilities for a geographic area for which he held responsibilities at IBM in the past 12 months.

28. On information and belief, Dell is a corporation organized under the laws of the State of Delaware, with its principal place of business in Round Rock, Texas.

29. Dell and IBM are competitors in the design, manufacture and sale of electronic devices, including in particular enterprise servers and storage, in which they compete heavily. IBM identified Dell in its 2009 10-K as a "principal competitor" in this area. Dell identified IBM in an exhibit to its 2009 10-K as a "Direct Competitor".

30. Indeed, Dell's website compares its servers with IBM servers and features a graphic with the quote "HP and IBM should be very afraid . . .". IBM's website includes comparisons with Dell servers, including a page entitled "Migrate from Dell".

## COUNT I – Breach of Noncompetition Agreement

31. IBM repeats and realleges as though fully set forth herein the allegations of Paragraphs 1 through 30 of the Complaint as Paragraph 31 of Count I above.

32. The Noncompetition Agreement is an enforceable agreement that imposes upon Mr. Johnson certain contractual obligations.

33. Mr. Johnson intends to and will breach the terms of his Noncompetition Agreement by, among other things, accepting employment with Dell.

34. If Mr. Johnson is not enjoined from working for Dell, thereby violating his Noncompetition Agreement, IBM will be irreparably injured.

35. If Mr. Johnson is not enjoined from violating the nonsolicitation covenants, IBM will be irreparably harmed.

## COUNT II – Misappropriation of Trade Secrets

36. IBM repeats and realleges as though fully set forth herein the allegations of Paragraphs 1 through 30 of the Complaint as Paragraph 36 of Count II above.

37. IBM possesses certain trade secrets and confidential information with which Mr. Johnson is familiar and which Mr. Johnson has a common law duty not to disclose outside of IBM.

38. The Noncompetition Agreement is an enforceable agreement that imposes upon Mr. Johnson certain contractual obligations, including the obligations of nondisclosure with respect to IBM's confidential information.

39. Mr. Johnson, as long as he is employed by Dell, will inevitably use and/or disclose IBM trade secrets for his own benefit and for the benefit of Dell.

40. As an unavoidable result of Mr. Johnson's impending misappropriation of IBM trade secrets, IBM will be irreparably harmed.

WHEREFORE, plaintiff demands judgment against defendant as follows:

      A.      Imposing preliminary and permanent injunctive relief ordering Mr. Johnson to refrain from: (a) breaching the terms of his Noncompetition Agreement with IBM; and (b) engaging in any employment arrangement with Dell in violation of IBM's rights under the Noncompetition Agreement.

      B.      Awarding IBM's attorneys' fees, costs and disbursements incurred as a result of this action; and

      C.      Awarding IBM such further relief as the Court deems just and proper.

May 21, 2009

                                    CRAVATH, SWAINE & MOORE LLP

                                      by _____
                                              Evan R. Chesler
                                          (EChesler@Cravath.com)
                                            Stephen S. Madsen
                                          (SMadsen@Cravath.com)
                                            Members of the Firm

                                                Worldwide Plaza
                                              825 Eighth Avenue
                                              New York, NY 10019
                                              (212) 474-1000

*Attorneys for Plaintiff International Business Machines Corporation*