UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>                                          Plaintiff,<br><br>vs.<br><br>DAVID L. JOHNSON,<br><br>                                          Defendant. | 09 Civ. 4826<br><br>DECLARATION OF<br>J. RANDALL MACDONALD |

I, J. Randall MacDonald, declare as follows:

1. I am currently employed by International Business Machines Corporation ("IBM") as Senior Vice President of Human Resources.

2. I have been employed by IBM since 2000 and have served in my present capacity since that time. As Senior Vice President of Human Resources, I am one of IBM's Senior Executive Officers.

3. As the Senior Vice President of Human Resources of IBM, I am responsible for the global human resources practices and policies of the company. I have responsibility for and access to employment files, which include, among other things, employees' self-assessments, work histories and compensation records. I am also responsible for agreements with IBM executives, such as Noncompetition Agreements and compensation packages.

4. David L. Johnson, whose most recent title is Vice President of Corporate Development, has worked at IBM for more than 27 years. For the past 9 years, he has directed IBM's acquisition and divestiture strategy. By virtue of his

responsibilities, Mr. Johnson possesses highly confidential information concerning some of IBM's most important and most sensitive business initiatives and strategies. Mr. Johnson's responsibilities and knowledge are global in scope and span the entire range of IBM businesses. Because of his exposure to IBM's highly confidential business information and in connection with his acceptance of certain equity grants and other compensation, Mr. Johnson executed a noncompetition agreement in 2005 (the "Noncompetition Agreement", a true and correct copy of which is attached hereto as Exhibit 1). In addition, Mr. Johnson has repeatedly confirmed his agreement with the terms of the Noncompetition Agreement by accepting additional equity grants, which are conditioned on such acceptance.

5.  In addition to his responsibilities as Vice President of Corporate Development, Mr. Johnson serves as a member of the Strategy Team. The Strategy Team, which consists of approximately 15 members selected from the most senior executives of the Company, is a forum for discussing the most sensitive and significant strategic concerns of the Company. The scope of issues considered by the Strategy Team includes every aspect of IBM's business, not only acquisition and divestiture activity. As a member of the Strategy Team, Mr. Johnson has gained insight into highly confidential information regarding, for example, yet-to-be-introduced products and "go-to-market" strategies. The information Mr. Johnson has gained as a member of the Strategy Team is carefully safeguarded by IBM, not made accessible to the public, to IBM's competitors, or even to most IBM employees. IBM's competitors could not replicate from public sources the information Mr. Johnson possesses as a member of the Strategy Team.

6. As part of my employment at IBM, I serve as a member of the IBM Integration & Values Team ("I&VT"), formerly known as the Senior Leadership Team. The I&VT consists of approximately 300 top executives who IBM believes are its key business leaders among its approximately 400,000 employees worldwide. I&VT members are formally appointed by the Chairman of IBM, and the I&VT essentially represents the senior management of the company. Indeed, members of the I&VT include all 20 Senior Executive Officers of IBM. The members of the I&VT are made aware of the most difficult and important strategic and competitive issues facing IBM. For that purpose, the I&VT members are exposed to and work with the most sensitive strategic information the company possesses.

7. I have served on the I&VT with Mr. Johnson since he became an I&VT member in 2006.

8. I&VT members, including Mr. Johnson, are exposed to highly confidential information regarding IBM's entire business. The purpose behind such exposure is to (1) develop corporate strategy, (2) drive innovation and growth, (3) address firm-wide issues through collaboration across departments, and (4) allow up-and-coming leaders to gain exposure to all areas of IBM's business. To those ends, I&VT members are not merely given access to highly confidential information, but participate extensively in programs that are designed to expose them to highly confidential aspects of IBM's business with which they would not otherwise be familiar based on their primary job responsibilities, with a view to broadening their understanding of the company and the most important issues, strategic choices and competitive challenges it faces.

9. In particular, I&VT members, including Mr. Johnson, are exposed to highly confidential information related to strategic plans, marketing plans, and long-term business opportunities, including the development status of specific IBM products, as well as extensive confidential assessments of the competitive landscape of the industries in which IBM participates. I&VT members receive such highly confidential information on a regular basis.

10. Given the highly confidential nature of the information to which I&VT members are exposed, and the fact that members of the I&VT are the senior executives who manage IBM's business and set its strategy, all members of the I&VT are asked to execute a noncompetition agreement.

11. The information Mr. Johnson possesses as a member of the I&VT represents IBM's extraordinary investment in research and innovation and is critical to IBM's competitive success; indeed, IBM has built its entire business around such highly confidential information. Consequently, that information is carefully safeguarded and is not made accessible to the public, to our competitors, or even to most IBM employees. IBM's competitors could not replicate from public sources the information Mr. Johnson possesses as a member of the I&VT. In my opinion, the confidential information in Mr. Johnson's possession will be valuable for a very long time, significantly longer than 12 months.

12. I received notice on the afternoon of May 19, 2009, that Mr. Johnson had expressed an intent to leave IBM and to begin employment with Dell Inc. ("Dell").

13. I spoke with Mr. Johnson on May 20, 2009. During the conversation, Mr. Johnson informed me that he intended to retire from the Company effective June 1, 2009.

14. Based on the information Mr. Johnson shared with me, I believe Mr. Johnson would report directly to and work closely with Dell's Chief Executive Officer, Michael S. Dell, as Dell's Senior Vice President of Strategy. Mr. Johnson's position at Dell, like his position at IBM, appears to have global reach and cut across all aspects of Dell's business.

15. During my May 20 conversation with Mr. Johnson, I reminded him of the Noncompetition Agreement and informed him that IBM would seek to enforce the agreement if he attempted to join Dell. During that conversation, I also encouraged Mr. Johnson to reconsider his decision and remain with IBM.

16. On May 25, 2009, Mr. Johnson contacted me and informed me that he had not changed his decision. On May 26, 2009, Mr. Johnson informed me that his start date with Dell has not yet been determined.

17. The highly confidential information that Mr. Johnson has in his possession by virtue of his job responsibilities, along with his membership on the Strategy Team and the I&VT, would be highly valuable to Dell, which is a significant competitor of IBM. The departure of Mr. Johnson for Dell would cause irreparable harm to IBM, both through the competitive advantages that employing Mr. Johnson would confer upon Dell and through the loss of the extensive knowledge IBM has paid for him to acquire. Moreover, in the event that other individuals like Mr. Johnson follow him to Dell, the injury to IBM will be compounded.

5

18. Over the course of his 27-year career at IBM, Mr. Johnson has received substantial compensation and, during the one-year term of the noncompetition covenant, he will be eligible to receive substantial compensation in connection with his retirement from the Company.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: May 2⁶/2009
Armonk, New York

_____
J. Randall MacDonald