UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
INTERNATIONAL BUSINESS MACHINES :
CORPORATION,                                      :
                                                  :
                        Plaintiff,                :          Civ. No. 09-cv-4826 (SCR)
                                                  :
            v.                                    :
                                                  :
DAVID L. JOHNSON,                                 :
                                                  :
                        Defendant.
-----------------------------------------------------------x

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AND TO STAY DISCOVERY

Schulte Roth & Zabel LLP
919 Third Avenue
New York, New York 10022
(212) 756-2000 (telephone)
(212) 593-5955 (facsimile)

Ronald E. Richman
Holly H. Weiss
Sara E. Solfanelli


Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103
(215) 963-5000 (telephone)
(215) 963-5001 (facsimile)

Michael L. Banks
Michael S. Burkhardt

*Attorneys for Defendant*

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS RELEVANT TO THE MOTION.......................................................2

A.   Procedural History...................................................................................................2

B.   The Amended Complaint ..........................................................................................3

     1.   Count III......................................................................................................... 4
     2.   Count IV......................................................................................................... 6

ARGUMENT.......................................................................................................................8

I.   STANDARD OF REVIEW..........................................................................................8

II.  IBM FAILS TO STATE A CLAIM FOR BREACH OF ITS EQUITY-BASED
    COMPENSATION PROGRAMS............................................................................................9

III. IBM'S BREACH OF DUTY CLAIM SHOULD BE DISMISSED....................................11

IV. DISCOVERY RELATING TO THE THIRD AND FOURTH COUNTS SHOULD BE
    STAYED. ....................................................................................................................16

CONCLUSION....................................................................................................................18

## TABLE OF AUTHORITIES

### CASES

*Abrahams v. Appellate Div. of the Sup. Ct.*,
  473 F. Supp. 2d 550 (S.D.N.Y. 2007), *aff'd*, 311 F. App'x 474 (2d Cir. 2009)..............9, 10, 11

*Anti-Monopoly, Inc. v. Hasbro, Inc.*,
  No. 94 Civ. 2120, 1996 WL 101277 (S.D.N.Y. Mar. 7, 1996) .................................................16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................................................8

*Black Car & Livery Ins., Inc. v. H & W Brokerage, Inc.*,
  No. 008615/04, 2006 WL 176660 (Sup. Ct. Nassau Co. Jan. 23, 2006) ...................................15

*Botti v. Russell*,
  180 A.D.2d 947 (3d Dep't 1992)................................................................................................15

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)........................................................................................................5

*Chrysler Capital Corp. v. Century Power Corp.*,
  137 F.R.D. 209 (S.D.N.Y. 1991) ..............................................................................................16

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991)..........................................................................................................5

*Don Buchwald & Assocs., Inc. v. Marber-Rich*,
  11 A.D.3d 277 (1st Dep't 2004) ................................................................................................13

*Feick v. Fleener*,
  653 F.2d 69 (2d Cir. 1981)........................................................................................................11

*Furia v. Furia*,
  116 A.D.2d 694 (2d Dep't 1986)................................................................................................9

*Gandler v. Nazarov*,
  No. 94 Civ. 2272, 1994 WL 702004 (S.D.N.Y. Dec. 14, 1994)................................................16

*Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  No. 00 Civ. 8688, 2003 WL 22218643 (S.D.N.Y. Sept. 25, 2003)............................................8

*Instead, Inc. v. ReProtect, Inc.*,
  No. 08 Civ. 5236, 2009 WL 274154 (S.D.N.Y. Feb. 5, 2009) ...........................................10, 11

*Iqbal v. Hasty*,
 490 F.3d 143 (2d Cir. 2007)....................................................................................8

*J&L Am. Enters., Ltd. v. DSA Direct, LLC*,
 No. 401937/05, 2006 WL 216680 (Sup. Ct. N.Y. Co. Jan. 27, 2006)...................9, 11

*Kaisman v. Hernandez*,
 61 A.D.3d 565 (1st Dep't 2009)...............................................................................9

*Keeney v. Kemper Nat'l Ins. Cos.*,
 No. 97-7683, 1998 WL 29815 (2d Cir. Jan. 27, 1998).............................................11

*Kliebert v. McKoan*,
 228 A.D.2d 232 (1st Dep't 1996).........................................................................9, 11

*Lamdin v. Broadway Surface Adver. Corp.*,
 272 N.Y. 133 (1936)...............................................................................................14

*Malmsteen v. Berdon, LLP*,
 477 F. Supp. 2d 655 (S.D.N.Y. 2007).....................................................................10

*Manhattan Motorcars, Inc. v. Automobili Lamborghini*,
 244 F.R.D. 204 (S.D.N.Y. 2007) .........................................................................8, 11

*Mayo, Lynch & Assocs., Inc. v. Fine*,
 148 A.D.2d 425 (2d Dep't 1989).............................................................................14

*Phansalker v. Andersen Weinroth & Co.*,
 344 F.3d 184 (2d Cir. 2003)....................................................................................14

*R.H. Damon & Co. v. Softkey Software Prods., Inc.*,
 811 F. Supp. 986 (S.D.N.Y. 1993)............................................................................5

*Rapoport v. Asia Elecs. Holding Co.*,
 88 F. Supp. 2d 179 (S.D.N.Y. 2000)........................................................................11

*RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty LLC*,
 156 F. App'x 349 (2d Cir. 2005)...............................................................................9

*Rivera v. Heyman*,
 No. 96 Civ. 4489, 1997 WL 86394 (S.D.N.Y. Feb. 27, 1997) .................................16

*Spang v. Katonah-Lewisboro Un. Free Sch. Dist.*,
 No. 07 Civ. 2257, 2009 WL 1674832 (S.D.N.Y. May 18, 2009)................................5

*Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*,
  206 F.R.D. 367 (S.D.N.Y. 2002) ................................................................................................16

*Sullivan & Cromwell LLP v. Charney*,
  No. 600333/2007, 2007 WL 1240437 (Sup. Ct. N.Y. Co. Apr. 30, 2007) ...................12, 14, 15

*Tectrade Int'l Ltd. v. Fertilizer Dev. & Inv., B.V.*,
  258 A.D.2d 349 (1st Dep't 1999) ..............................................................................................11

*Thomas v. Atl. Express Corp.*,
  No. 07 Civ. 1978, 2009 WL 856993 (S.D.N.Y. Mar. 31, 2009) ...........................................8, 15

*Veritas Capital Mgmt. L.L.C. v. Campbell*,
  No. 650058/08, 2008 WL 5491146 (Sup. Ct. N.Y. Co. Nov. 24, 2008) ......................12, 13, 15

*Western Elec. Co. v. Brenner*,
  41 N.Y.2d 291 (1977) ................................................................................................................14

Defendant, David L. Johnson, by and through his undersigned attorneys, respectfully submits this memorandum of law in support of his motion to dismiss Counts III and IV of the Amended Complaint filed against him by International Business Machines Corporation ("IBM"), for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and to stay discovery with regard to Counts III and IV of the Amended Complaint pending resolution of this motion.

## PRELIMINARY STATEMENT

On May 26, 2009, IBM served Mr. Johnson with a complaint alleging two causes of action: breach of a purported non-competition agreement and misappropriation of trade secrets. The sole relief IBM sought in the complaint was preliminary and permanent injunctive relief to prevent Mr. Johnson from commencing employment with Dell Inc. ("Dell"). Shortly after filing the complaint, IBM unsuccessfully moved for preliminary injunctive relief. On June 24, 2009, two days after hearing on IBM's preliminary injunction motion, IBM served Mr. Johnson with an amended complaint (the "Amended Complaint" or "Cmplt."), alleging two additional causes of action: breach of contract, based on Mr. Johnson's alleged breach of his obligations under IBM's equity-based compensation programs (Count III) and breach of duty, based on Mr. Johnson's alleged breach of his fiduciary duty of loyalty and good faith to IBM (Count IV).[1]

These additional causes of action should be dismissed for failure to state a claim upon which relief can be granted. IBM's new breach of contract claim fails because IBM's equity-based compensation programs do not impose on Mr. Johnson any obligation to refrain

---

[1]   On June 15, 2009, Mr. Johnson and IBM stipulated to extend Mr. Johnson's time to answer or otherwise respond to the complaint that was served on May 26, 2009 from June 15, 2009 to June 29, 2009. (*See* Declaration of Sara E. Solfanelli, dated July 9, 2009 ("Solfanelli Decl.") at ¶ 6.) IBM served Mr. Johnson with the Amended Complaint on June 24, 2009. Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, Mr. Johnson's response to the Amended Complaint became due on July 9, 2009.

from competing with IBM after his employment ends.  Mr. Johnson therefore did not breach any

contractual obligations by commencing employment with Dell.  IBM's breach of duty claim fails

because IBM has failed to allege facts to support the elements of any cognizable breach of duty

claim under New York law.  IBM does not, and cannot, allege that Mr. Johnson unfairly

competed with IBM or diverted IBM's business opportunities to himself or others to IBM's

detriment.  IBM's allegations that Mr. Johnson "contemplated" and took "steps" and made

"efforts" toward creating a "proposed" private equity venture do not support a breach of duty

claim in New York.[2]

## STATEMENT OF FACTS RELEVANT TO THE MOTION

### A.    Procedural History

The day before Mr. Johnson was to start work at Dell, IBM sought a temporary

restraining order to prevent him from working at Dell.  At a hearing on that motion on June 1,

2009, Judge Karas stated, "there are some questions about the contract," and "it's not clear to me

that there is a meeting of the minds" with respect to the agreement.  (Solfanelli Decl., Ex. 1 at

28-29.)  Judge Karas, therefore, denied the motion and allowed Mr. Johnson to begin working at

Dell, subject to certain restrictions.  (*Id.* at 27-30.)

An evidentiary hearing on IBM's motion for a preliminary injunction was held on

June 22, 2009 before this Court.  Prior to the hearing, the parties conducted expedited discovery,

which included, among other things, extensive productions of documents and eight depositions.

(*See* Solfanelli Decl. at ¶ 7.)  IBM deposed Mr. Johnson for more than six hours, during which

IBM's counsel questioned Mr. Johnson at length concerning JSJ Capital Management ("JSJ") and

Mr. Johnson's relationship thereto.  (*See id.*)  IBM also served three non-party subpoenas on June

---

[2]    Mr. Johnson hereby reserves and does not waive any defenses that are not argued in this motion, including,
without limitation, that claims in the Amended Complaint are barred in whole or in part by the statute of
limitations and/or estoppel.

19, 2009 and one non-party subpoena on June 22, 2009 generally seeking documents related to JSJ.[3]  (*Id.*)

At the preliminary injunction hearing, the Court considered testimony — including live testimony of Mr. Johnson and Randall MacDonald (IBM's Senior Vice President of Human Resources) — documentary evidence and admissions by IBM employees.  On June 26, 2009, the Court issued an opinion (the "Opinion"), denying IBM's motion for a preliminary injunction.  (Opinion at 1.)  In the Opinion, the Court agreed with Judge Karas that "doubt was raised" at the hearing on the temporary restraining order "as to whether the alleged non-competition agreement had been duly executed by Mr. Johnson."  (Opinion at 1.)  The Court found that "[a]t no point did IBM take any actions, concurrent with its requests that Mr. Johnson re-sign the agreement, suggesting that it believed that Mr. Johnson had accepted its offer to enter into a non-competition agreement."  (*Id.* at 17.)  The Court held that IBM would face "a daunting, if not insurmountable, task in convincing a finder-of-fact that it treated Mr. Johnson's ambiguous conduct as an acceptance of its offer to enter into a non-competition agreement."  (*Id.* at 19.)

**B.     The Amended Complaint**

Following the hearing on IBM's preliminary injunction motion and just before the Court issued its Opinion denying the motion, on June 24, 2009, IBM served Mr. Johnson with the Amended Complaint, alleging two new causes of action: breach of contract, based on Mr. Johnson's alleged breach of his obligations under IBM's equity-based compensation programs (Count III) and breach of duty, based on Mr. Johnson's alleged breach of his fiduciary duty of loyalty and good faith to IBM (Count IV).

---

[3]     On July 2, 2009, IBM's counsel informed Mr. Johnson's counsel that IBM served the subpoenas to ensure that the recipients preserved the documents, and it will not be taking steps to enforce the subpoenas at this time. (*See* Solfanelli Decl. at ¶ 8.)  To date, no documents have been produced in response to the subpoenas.  (*Id.*)

### 1. Count III

In Count III, IBM alleges that by commencing employment at Dell, Mr. Johnson breached his obligations under IBM's "equity-based compensation programs" in which Mr. Johnson participated while he was employed by IBM (the "Programs"). (*See* Cmplt. ¶¶ 28, 62.) When accepting equity under the Programs, Mr. Johnson agreed to the terms and conditions of the Programs' plans. (*See id.*) In paragraph 27 of the Amended Complaint, IBM alleges that under the Programs, "compensation previously awarded to an executive must be returned to IBM under certain circumstances, including if the executive leaves IBM to work for a competitor." (*Id.* at ¶ 27.) Contrary to the allegation in paragraph 27 of the Amended Complaint, IBM alleges in paragraph 62 of the Amended Complaint that the Programs "impose upon Mr. Johnson certain contractual obligations, including the obligation to refrain from working for a competitor." (*Id.* at ¶ 62.) IBM alleges, therefore that "[b]y accepting employment at Dell, Mr. Johnson has breached his obligations under [the Programs]." (*Id.* at ¶ 63.) IBM fails to allege any specific contractual provisions that Mr. Johnson breached. In fact, IBM neither attaches to nor incorporates into the Amended Complaint the plan documents governing the Programs or the award agreements provided to Mr. Johnson, but rather generally refers to "equity-based compensation programs" in its allegations to support Count III.

The terms and conditions of the Programs do not include the restrictions IBM alleges. Under the Programs, IBM "may cancel, rescind, suspend, withhold or otherwise limit or restrict any unexpired, unpaid, or deferred Awards at any time if the Participant is not in compliance with all applicable provisions of the Award Agreement and the Plan, or if the Participant engages in any 'Detrimental Activity.'" (*See* Solfanelli Decl., Ex. 2 (IBM 2001 Long-

4

Term Performance Plan), at § 13; Ex. 3 (IBM 1999 Long-Term Performance Plan), at § 13.)[4]
"Detrimental Activity" includes rendering services to a competitor. (*See id.*) The plan
documents governing the Programs further provide that "[i]n the event a Participant [engages in
Detrimental Activity] prior to, or during . . . a [12-month] Rescission Period, then any exercise,
payment or delivery may be rescinded within two years after such exercise, payment or
delivery." (*Id.*) Mr. Johnson's equity award agreements include an acknowledgement that IBM
may cancel or rescind the awards if Mr. Johnson renders services for a competitor prior to, or
during the 12-month Rescission Period. (*See* Solfanelli Dec., Ex. 4 at IBM-DJ-00128211-14,
IBM-DJ-00128220-21.)[5]

　　　　　There is nothing in the plan documents governing the Programs, or in the equity
award agreements Mr. Johnson executed in connection with the acceptance of equity in
connection with the Programs, that imposes on Mr. Johnson an obligation to refrain from
working for a competitor after leaving IBM. Instead, the documents merely provide for a "claw-
back" of certain compensation if Mr. Johnson works for a competitor during specified time
periods. Contrary to the unequivocal terms and conditions of the Programs — and IBM's
allegation in paragraph 27 of the Amended Complaint — IBM incorrectly alleges in paragraph

---

[4]　　When deciding a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts may consider documents that the plaintiff has neither attached to nor incorporated by reference in the complaint when: (1) plaintiffs have undisputed notice of the contents of such documents; and (2) such documents are integral to the plaintiffs' claim. *See R.H. Damon & Co. v. Softkey Software Prods., Inc.*, 811 F. Supp. 986, 989 (S.D.N.Y. 1993) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)). *See also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (holding that "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint" (citations omitted)); *Spang v. Katonah-Lewisboro Un. Free Sch. Dist.*, No. 07 Civ. 2257, 2009 WL 1674832, at *10 (S.D.N.Y. May 18, 2009) (Robinson, J.). The documents relating to the Program are unquestionably documents that IBM has "in its possession or [has] knowledge of and upon which [it] relied in bringing suit." *Cortec*, 949 F.2d at 48. Documents that set forth the terms and conditions of the Programs that IBM alleges Mr. Johnson breached may be considered on this motion.

[5]　　The Court has recognized that IBM's 2001 Long-Term Performance Plan merely contains a provision allowing IBM potentially to "claw back" certain portions of equity awards if Mr. Johnson accepted employment with a competitor rather than a prohibition on competition. (*See* Opinion at 18.)

5

62 of the Amended Complaint that the Programs "impose upon Mr. Johnson certain contractual obligations, including the obligation to refrain from working for a competitor." (Cmplt. ¶ 62.) Count III of the Amended Complaint is entirely based on that demonstrably false allegation: IBM alleges that "[b]y accepting employment at Dell, Mr. Johnson has breached his obligations under IBM's equity-based compensation programs," even though no such prohibition exists in the documents governing the Programs. (*Id.* at ¶ 63.)[6]

### 2.    Count IV

In Count IV of the Amended Complaint, IBM alleges that Mr. Johnson breached a fiduciary duty of loyalty and good faith to IBM. (Cmplt. ¶¶ 65-72.) IBM alleges in the Amended Complaint that "beginning at least in 2005," Mr. Johnson "took substantial steps toward the creation of a venture capital firm with a focus on investments in the technology sector," which was named "JSJ Capital Management." (*Id.* at ¶ 41.) According to IBM, Mr. Johnson and another IBM employee worked on the "proposed JSJ venture" during regular work hours. (*Id.* at ¶ 44.) IBM further alleges that Mr. Johnson "repeatedly used IBM resources and facilities to prepare presentations to potential JSJ investors." (*Id.*) IBM asserts that while Mr. Johnson was traveling on an IBM business trip in the Middle East, he made "an effort to cultivate potential investors for JSJ" and that he "contemplated the use of contacts made during that trip" for purposes of developing JSJ. (*Id.* at ¶¶ 45, 46.) IBM also asserts that "Mr. Johnson touted his access to IBM's trade secrets." (*Id.* at ¶ 71.) Finally, IBM asserts that Mr. Johnson never disclosed "his efforts" to IBM and that he used "IBM resources, facilities and personnel for

---

[6]    IBM also asserts that Mr. Johnson covenanted not to hire or solicit other IBM employees or IBM customers in connection with the Programs. (Cmplt. ¶ 27.) IBM does not allege, however, that Mr. Johnson has hired or solicited any IBM employees or IBM customers.

his own personal financial interests," which was a violation of IBM's Business Conduct Guidelines. (*Id.* at ¶¶ 47, 48.)

IBM does not allege, however, that Mr. Johnson ever formed a venture capital firm or raised funds from investors. Nor does IBM allege that Mr. Johnson misappropriated IBM's trade secrets to which he had access. To the contrary, IBM merely alleges that Mr. Johnson took "steps" toward creating a "proposed JSJ venture," that he made an "effort" to identify "potential investors" and that he "contemplated" the use of contacts he made while working for IBM. (Cmplt. ¶¶ 41, 44-46.) Further, although IBM alleges that "potential targets for investment" identified in the JSJ marketing presentations represented "key areas" for which Mr. Johnson "was leading significant strategic initiatives on IBM's behalf," IBM does not allege that JSJ was competing — or would compete — with IBM in any capacity. (*Id.* at ¶ 49.) After deposing Mr. Johnson for several hours regarding his activities related to JSJ during expedited discovery on IBM's motion for a preliminary injunction, IBM merely alleges that Mr. Johnson unsuccessfully attempted to create a private venture firm that would not compete with IBM. (*See* Solfanelli Decl. at ¶ 7.) IBM does not allege that it suffered any damages as a result of Mr. Johnson's alleged breach of duty. Instead, IBM seeks retribution against Mr. Johnson for accepting a job with Dell by demanding the "return of all compensation paid to Mr. Johnson during the period of disloyalty" — which IBM alleges "reaches at least as far back as 2005 and potentially farther." (Cmplt. ¶ 72.)[7]

At the June 22, 2009 hearing on IBM's preliminary injunction motion, IBM attempted to admit into evidence information concerning JSJ. (*See* Solfanelli Decl. at ¶ 7.) Mr. Johnson's counsel objected to the admission of these allegations and testimony. (*See id.*) When

---

[7]    While seeking to claw back all compensation that Mr. Johnson earned from IBM during at least the last four years, IBM simultaneously is seeking to prevent Mr. Johnson from working for Dell for at least one year. (*See* Cmplt. ¶ 55.)

7

questioned by the Court as to its relevance, IBM's counsel argued only that it went to Mr. Johnson's "credibility." (*See id.*)  The Court excluded the evidence.  Subsequently, IBM filed the Amended Complaint, in which Count IV is based on the information regarding JSJ that was excluded from the hearing.[8]

## ARGUMENT

## I.

## STANDARD OF REVIEW

A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face;" if the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).  Most fundamentally, to avoid dismissal, a plaintiff must sufficiently plead facts to support all the elements of a cause of action. *See Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688, 2003 WL 22218643, at *2 (S.D.N.Y. Sept. 25, 2003). *See also Thomas v. Atl. Express Corp.*, No. 07 Civ. 1978, 2009 WL 856993, at *2 (S.D.N.Y. Mar. 31, 2009) (Robinson, J.) (finding that a "formulaic recitation of the elements of a cause of action will not do" (internal quotation omitted)).

While the Court must accept the allegations in the complaint as true, and view the pleadings in the light most favorable to the plaintiff, when a plaintiff's "factual allegations or legal conclusions are flatly contradicted by documentary evidence, they are not presumed to be true, or even accorded favorable inference[]." *Manhattan Motorcars, Inc. v. Automobili Lamborghini*, 244 F.R.D. 204, 213 (S.D.N.Y. 2007) (internal citations omitted). *See also*

---

[8]  Count IV of the Amended Complaint is explicitly based on Mr. Johnson's alleged "duplicitous execution of his Non-Competition Agreement," and his "efforts to develop" JSJ. (Cmplt. ¶¶ 68-71.)  IBM does not allege that it suffered any damages as a result of Mr. Johnson's alleged breach of duty.

*Kaisman v. Hernandez*, 61 A.D.3d 565, 566 (1st Dep't 2009); *Kliebert v. McKoan*, 228 A.D.2d 232, 232 (1st Dep't 1996).  Further, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  *Abrahams v. Appellate Div. of the Sup. Ct.*, 473 F. Supp. 2d 550, 554-55 (S.D.N.Y. 2007) (Robinson, J.), *aff'd*, 311 F. App'x 474 (2d Cir. 2009) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)).

## II.

### IBM FAILS TO STATE A CLAIM FOR BREACH OF ITS EQUITY-BASED COMPENSATION PROGRAMS.

IBM's breach of contract claim in Count III must be dismissed because the contract upon which it is based does not impose on Mr. Johnson any "obligation to refrain from working for a competitor."  (*See* Cmplt. ¶ 62.)  To state a claim for a breach of contract under New York law,[9] a plaintiff must plead: (1) the existence of a binding contract; (2) plaintiff's performance of that contract; (3) defendant's non-performance of that contract; and (4) damages attributable to the breach.  *See, e.g., RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty LLC*, 156 F. App'x 349, 350-51 (2d Cir. 2005); *see also Furia v. Furia*, 116 A.D.2d 694, 695 (2d Dep't 1986).  A cause of action for breach of contract will be dismissed if it fails to allege the breach of a specific contractual provision.  *See J&L Am. Enters., Ltd. v. DSA Direct, LLC*, No. 401937/05, 2006 WL 216680, at *5-6 (Sup. Ct. N.Y. Co. Jan. 27, 2006) (internal citations omitted).  Although at the motion to dismiss stage courts should resolve any contractual ambiguities in favor of the plaintiff, ambiguity does not exist "where one party's view strains the contract

---

[9]   The terms and conditions of the Programs provide that the programs "and each Award Agreement shall be governed by the laws of the state of New York, excluding any conflicts or choice of law rule or principle that might otherwise refer construction or interpretation of the Plan to the substantive law of another jurisdiction." (Solfanelli Decl., Ex. 3 at § 15(e).)  Further, Mr. Johnson worked at IBM's headquarters in Armonk, New York and resides in Connecticut.  (*See* Cmplt. ¶¶ 3-4.)  This case is before the Court based on diversity jurisdiction, and New York law applies to Counts III and IV.

language beyond its reasonable and ordinary meaning." *Instead, Inc. v. ReProtect, Inc.*, No. 08 Civ. 5236, 2009 WL 274154, at *5 (S.D.N.Y. Feb. 5, 2009) (internal quotations omitted).

Rather than providing the terms of the purported contract allegedly breached, each element of the alleged breach or the resultant damages, IBM makes "conclusory allegations or legal conclusions masquerading as factual conclusions," *Abrahams,* 473 F. Supp. 2d at 555, that Mr. Johnson "breached his obligations under IBM's equity-based compensation programs," by commencing employment with Dell. (*See* Cmplt. ¶ 63.) IBM does not identify any specific provisions of a contract that were breached or attach the contract to the Amended Complaint. Nor does IBM specify the damages it alleges it suffered as a result of Mr. Johnson's alleged breach. In short, IBM "entirely fails to specify whether [it] is alleging a breach of explicit contractual provisions, and if so, what those provisions might say." *Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 666 (S.D.N.Y. 2007). Count III should be dismissed based on IBM's failure to properly plead a breach of contract claim. *See id.*

Even if IBM had sufficiently plead a breach of contract claim, IBM has not alleged truthful, uncontradicted facts that constitute a breach of Mr. Johnson's obligations of the terms and conditions of the Programs. IBM alleges that the Programs "impose certain contractual obligations, including the obligation to refrain from working for a competitor." (Cmplt. ¶ 62.) This allegation is, however, demonstrably false. The Programs contemplate that Mr. Johnson may begin working for a competitor and only that IBM *may* cancel, suspend, withhold or otherwise limit or restrict Mr. Johnson's equity-based compensation *if* Mr. Johnson decides to do so during a certain time period.[10] (*See* Solfanelli Decl., Ex. 2 at § 13, Ex. 3 at § 13,

---

[10]    IBM alleges in paragraph 27 of the Amended Complaint that if a participant begins to work for a competitor, certain equity awards may be subject to forfeiture; however, IBM's allegations in Count III that the Programs prohibit a participant from working for a competitor conflict with the allegation in paragraph 27 and are incorrect. (*See* Cmplt. ¶¶ 27, 62, 63.)

Ex. 4; Cmplt. ¶ 27.)  Neither the plans nor the equity award agreements contain contractual

provisions that prohibit Mr. Johnson from working for a competitor.  (*See* Solfanelli Decl., Exs.

2-4.)

IBM's allegation in Count III that Mr. Johnson breached a contract because he

accepted employment with Dell is a legal conclusion based on a demonstrably false factual

allegation.  IBM's allegations in Count III consist of bare legal conclusions and factual claims

that are flatly contradicted by documentary evidence and are therefore not presumed true or

entitled to favorable inference.  *See Manhattan Motorcars, Inc.*, 244 F.R.D. at 213; *Abrahams*,

473 F. Supp. 2d at 555; *Kliebert*, 228 A.D.2d at 232.  IBM has failed to allege facts sufficient to

support an allegation that Mr. Johnson has breached a specific contractual provision in the

Programs, because the "provisions of [the Programs] prevail over the conclusory allegations of

the [Amended] [C]omplaint."  *Tectrade Int'l Ltd. v. Fertilizer Dev. & Inv., B.V.*, 258 A.D.2d 349,

349 (1st Dep't 1999) (internal quotations omitted).  Count III should therefore be dismissed.  *See,*

*e.g.*, *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 182 (S.D.N.Y. 2000) (granting

defendants' motion to dismiss when documents contradict plaintiffs' allegations); *Feick v.*

*Fleener*, 653 F.2d 69, 75 (2d Cir. 1981).  *See also Keeney v. Kemper Nat'l Ins. Cos.*, No. 97-

7683, 1998 WL 29815, at *1-2 (2d Cir. Jan. 27, 1998) (holding a breach of contract claim is

properly dismissed when the agreement unambiguously permits the behavior alleged in the

complaint); *Instead, Inc.*, 2009 WL 274154, at *5-7; *J&L Am. Enters.*, 2006 WL 216680, at *5-

6.

### III.

### IBM'S BREACH OF DUTY CLAIM SHOULD BE DISMISSED.

Relying on the faithless servant doctrine, IBM asserts that as a result of Mr.

Johnson's alleged breach of fiduciary duty of loyalty and good faith IBM is entitled to "the return

11

of all compensation paid to Mr. Johnson during his period of disloyalty, which reaches at least as

far back as 2005 and potentially farther." (Cmplt. ¶ 72.) Even if the facts alleged by IBM are

true (and they are not), IBM has failed to allege a single fact that amounts to a breach of duty.

The duty of loyalty "has been limited to cases where the employee, acting as the

agent of the employer, unfairly competes with his employer, diverts business opportunities to

himself or others to the financial detriment of the employer, or accepts improper kickbacks."

*Sullivan & Cromwell LLP v. Charney*, No. 600333/2007, 2007 WL 1240437, at *5 (Sup. Ct.

N.Y. Co. Apr. 30, 2007) (citing *Western Elec. Co. v. Brenner,* 41 N.Y.2d 291 (1977)

(kickbacks); *Lamdin v. Broadway Surface Adver. Corp.,* 272 N.Y. 133, 138 (1936) (earning

secret profits at expense of employer); *Alexander & Alexander of N.Y., Inc. v. Fritzen*, 147

A.D.2d 241, 247-48 (1st Dep't 1989) (diverting corporate opportunities); *Foley v. D'Agostino*, 21

A.D.2d 60, 67 (1st Dep't 1964) (competing with employer)). A claim of breach of the fiduciary

duty of good faith similarly requires allegations that the officer derived personal profit at the

expense of the employer, unfairly competed with the employer, or diverted or exploited

corporate opportunities for the officer's personal benefit. *See Veritas Capital Mgmt. L.L.C. v.

Campbell*, No. 650058/08, 2008 WL 5491146, at *11 (Sup. Ct. N.Y. Co. Nov. 24, 2008) (citing

*Bertoni v. Catucci*, 117 A.D.2d 892 (3d Dep't 1986); *Alexander & Alexander*, 147 A.D.2d at

248). IBM does not — and cannot — allege that Mr. Johnson unfairly competed with IBM,

derived personal profit at IBM's expense, diverted or exploited corporate opportunities or

accepted improper kickbacks.

*First*, IBM does not allege that Mr. Johnson unfairly competed with IBM through

his unsuccessful efforts to create a venture capital fund. To establish unfair competition, an

employer must plead that its employee made improper use of the employer's time, facilities or

12

proprietary secrets in creating a competing business. *See Don Buchwald & Assocs., Inc. v. Marber-Rich*, 11 A.D.3d 277, 278 (1st Dep't 2004) (finding that employer established that employees may have engaged in unfair competition by copying employer's confidential information and altering contracts to solicit employer's clients away from employer to their new competing business). *See also Veritas Capital Mgmt.*, 2008 WL 5491146, at \*10. Although IBM alleges that Mr. Johnson used IBM's time, resources and facilities "for his personal gain" in creating JSJ, IBM fails to allege that JSJ was a competing business or that it was, in fact, created. (*See* Cmplt. ¶¶ 44, 69.) In fact, IBM does not allege that Mr. Johnson, while employed by IBM, engaged in any activity that competed with IBM.

*Second*, the Amended Complaint is devoid of any allegation that Mr. Johnson derived personal profits or diverted business opportunities to himself or others at IBM's expense. IBM alleges that Mr. Johnson took "steps" toward creating a venture capital firm "in pursuit of [his] own personal financial interests" and "contemplated" the use of contacts he made through IBM. (Cmplt. ¶¶ 43, 46.) IBM also asserts that Mr. Johnson "exploited IBM's business networks and connections for his private venture," but does not allege that Mr. Johnson exploited IBM's business opportunities. (*Id.* at ¶ 70.) IBM fails to allege that Mr. Johnson enjoyed any personal profits, engaged in any activity that conflicted with IBM's interests or that he usurped any business opportunities from IBM. Indeed, it is nonsensical to suggest that Mr. Johnson's unsuccessful attempts to start a venture capital fund — that never raised any money or made any investments — somehow diverted or exploited business opportunities from IBM, a multi-billion dollar technology company. *See Veritas Capital Mgmt.*, 2008 WL 5491146, at \*11 (finding that defendant did not divert any corporate opportunity because plaintiff had neither an "interest" or

13

"tangible expectancy" in the opportunity nor was the opportunity the same as, necessary for or essential to the plaintiff's business).

Third, IBM does not even suggest that Mr. Johnson received an improper kickback or earned a secret profit from any person or entity related to IBM. While an employee "must not seek to acquire indirect advantages from third persons for performing duties and obligations owed to his employer," the Amended Complaint is devoid of any allegations that Mr. Johnson sought any compensation from others for his work for IBM. See Western Elec. Co., 41 N.Y.2d at 295. See also Lamdin, 272 N.Y. at 138 (finding employee breached his duty of loyalty by receiving secret profits); Phansalker v. Andersen Weinroth & Co., 344 F.3d 184, 208 (2d Cir. 2003) (finding that employee breached his duty of loyalty by failing to disclose certain investment opportunities from which he profited and benefits that he received as a result of his employment). While IBM attempts to claw back all of Mr. Johnson's compensation based on its allegations that Mr. Johnson took "steps" toward creating a "proposed JSJ venture," that he made an "effort" to identify "potential investors" and that he "contemplated" the use of contacts he made while working for IBM (Cmplt. ¶¶ 41, 44-46), merely thinking about or taking steps toward creating a business, even a competing business, is not a breach of a fiduciary duty. See Mayo, Lynch & Assocs., Inc. v. Fine, 148 A.D.2d 425, 426 (2d Dep't 1989).

IBM's other allegations on which it attempts to base Count IV likewise do not support a claim for breach of duty. IBM alleges that Mr. Johnson "touted" having access to IBM trade secrets, which "adversely affected his job performance." (Cmplt. ¶ 71.) There can be no breach of fiduciary duty — or other claim — based upon an employee's mere "touting" of access to trade secrets, without the employee actually disclosing any while unfairly competing with his employer. See Sullivan & Cromwell, 2007 WL 1240437, at *5-6 (finding no breach of duty

14

claim existed when employer alleged only that employee disclosed confidential information).[11] Simply put, IBM has not made any allegations that support a claim that Mr. Johnson was disloyal by virtue of his activities related to JSJ.

Finally, Mr. Johnson's alleged "duplicitous execution" of a purported non-competition agreement — which allegation this Court has already found to be untrue (*see* Opinion at 4-5, 18-19)[12] — cannot support a claim for breach of duty.[13] Even if that factual allegation is correct (which it is not), alleged "duplicitous" conduct is not unfair competition or an improper use of the employer's resources or confidential information to create a competing business or evidence of an improper kickback. While IBM may be unhappy as a result of its failure to reach an agreement with Mr. Johnson as to the terms of a non-competition agreement, that failure does not give rise to any breach of duty claim.

In short, assuming, *arguendo*, that all the facts alleged in the Amended Complaint are true, they do not support a cause of action for breach of duty as a matter of law. *See Veritas Capital Mgmt.*, 2008 WL 5491146, at *10-11; *Sullivan & Cromwell*, 2007 WL 1240437, at *5-6. *See also Thomas*, 2009 WL 856993, at *2. IBM's claim for a breach of duty (Count IV) should therefore be dismissed.

---

[11]   Similarly, to the extent that IBM alleges that Mr. Johnson breached a duty to IBM by failing to disclose his activities related to JSJ, an employee does not have a duty to disclose to his employer activity that is not disloyal or a breach of duty. *See Botti v. Russell*, 180 A.D.2d 947, 949-50 (3d Dep't 1992) ("to trigger the duty to disclose, the fiduciary must have some reason to believe that the information is material and germane to a contemplated transaction such that the failure to disclose it has the same net effect as an affirmative misrepresentation").

[12]   The Court found Mr. Johnson to be "an extremely credible and reasonable witness" and although "Mr. Johnson certainly was too clever by half, his goal was not to mislead IBM." (Opinion at 18-19.)

[13]   To the extent IBM is asserting that Mr. Johnson breached a duty of good faith implied in the purported non-competition agreement, such an allegation cannot be made independent of IBM's first cause of action for breach of contract based on the purported non-competition agreement. "A separate cause of action for breach of the implied covenant of good faith and fair dealing is duplicative of the a cause of action for breach of contract." *Black Car & Livery Ins., Inc. v. H & W Brokerage, Inc.*, No. 008615/04, 2006 WL 176660, at *4 (Sup. Ct. Nassau Co. Jan. 23, 2006) (citing *Jacobs Private Prop., LLC v. 450 Park LLC*, 803 N.Y.2d 14, 15 (1st Dep't 2005)).

## IV.

## DISCOVERY RELATING TO THE THIRD AND FOURTH COUNTS SHOULD BE STAYED.

Discovery as to Counts III and IV of the Amended Complaint should be stayed. Pursuant to Fed. R. Civ. P. 26(c), the Court has discretion to stay discovery for "good cause." Good cause may be shown when "a party has filed (or sought leave to file) a dispositive motion such as a motion to dismiss." *Anti-Monopoly, Inc. v. Hasbro, Inc.*, No. 94 Civ. 2120, 1996 WL 101277, at \*2 (S.D.N.Y. Mar. 7, 1996); *see also Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002).  "A stay pending determination of a dispositive motion that potentially eliminates the entire action will neither substantially nor unduly delay the action, should it continue." *Rivera v. Heyman*, No. 96 Civ. 4489, 1997 WL 86394, at \*1 (S.D.N.Y. Feb. 27, 1997).  Discovery stays are routinely granted when a defendant's motion "is potentially dispositive, and appears to be not unfounded in the law," *Gandler v. Nazarov*, No. 94 Civ. 2272, 1994 WL 702004, at \*4 (S.D.N.Y. Dec. 14, 1994), or when the motion "appears to have substantial grounds." *Chrysler Capital Corp. v. Century Power Corp.*, 137 F.R.D. 209, 211 (S.D.N.Y. 1991).

In determining a request for a stay, courts consider the breadth of discovery sought and the burden of responding to it, prejudice suffered as a result of a stay and the strength of the motion that is the basis for the stay application. *See Anti-Monopoly, Inc.*, 1996 WL 101277, at \*2-4; *Spencer Trask Software*, 206 F.R.D. at 368.  IBM issued four broad non-party subpoenas with regard to Count IV, which is based on Mr. Johnson's activities related to JSJ, that will impose significant burdens upon Mr. Johnson and non-parties.  Mr. Johnson has argued in this motion that his alleged activities related to JSJ do not constitute a breach of duty.  Mr. Johnson and third parties should not be forced to expend time and resources in discovery unless

16

this Court determines that Mr. Johnson's activities related to JSJ could justify a plausible claim for relief by IBM.

IBM will not be prejudiced by a stay of discovery with regards to Counts III and IV of the Amended Complaint.[14] Extensive, and expensive, expedited discovery has already taken place in this litigation. The cost to Mr. Johnson and non-parties of engaging in potentially needless discovery tips the balance in favor of granting a stay of discovery.

---

[14] As IBM acknowledged, the documents requested pursuant to the non-party subpoenas will be preserved. (*See* Solfanelli Decl. at ¶ 8.) Further, IBM has already conducted a six hour deposition during which it questioned Mr. Johnson at length regarding JSJ.

17

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the third and fourth causes of action in the Amended Complaint and to stay discovery with respect thereto should be granted.

Dated: New York, New York
       July 9, 2009

                    SCHULTE ROTH & ZABEL LLP

                    By: _____ (SES)
                    Ronald E. Richman
                    Holly H. Weiss
                    Sara E. Solfanelli
                    919 Third Avenue
                    New York, New York  10022
                    Telephone: (212) 756-2000
                    Facsimile: (212) 593-5955

                    MORGAN, LEWIS & BOCKIUS LLP

                    Michael L. Banks
                    Michael S. Burkhardt
                    1701 Market Street
                    Philadelphia, PA 19103
                    Telephone: (215) 963-5000
                    Facsimile: (215) 963-5001

                    *Attorneys for Defendant David L. Johnson*