**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

INTERNATIONAL BUSINESS MACHINES
CORPORATION,

                                        Plaintiff,

                vs.                                             No. 09 Civ. 4826 (SCR)

DAVID L. JOHNSON,

                                        Defendant.

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
AND TO STAY DISCOVERY

Evan R. Chesler
Stephen S. Madsen
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Plaintiff International Business
Machines Corporation*

# TABLE OF CONTENTS

Page

Preliminary Statement........................................................................................................1

Statement of Relevant Facts...........................................................................................3

    A.    The Initial Complaint and Preliminary Injunction Motion.......................3

    B.    Expedited Discovery...................................................................................3

    C.    The Amended Complaint.............................................................................4

Argument .........................................................................................................................5

I.     IBM HAS PROPERLY ALLEGED A CLAIM FOR BREACH OF CONTRACT...........7

    A.    IBM Adequately Pled the Existence of At Least Two Separate Contracts in Count III...............................................................................................7

    B.    IBM Sufficiently Alleges That Defendant's Conduct Breached His Contractual Obligations. ............................................................................9

          i    Defendant Breached the LTPP and the Award Agreement by Accepting Employment at Dell and Soliciting Employees........................9

          ii    Defendant's Conduct Regarding JSJ Breached Terms of Various Contracts with IBM.................................................................................10

II.    IBM HAS PROPERLY ALLEGED A CLAIM FOR BREACH OF DUTY. ..................15

    A.    Defendant Misstates the Applicable Law. ...............................................15

    B.    IBM Adequately Pled That Defendant Was a Faithless Servant. ...........17

III.   IF THE COURT CONCLUDES THAT IBM FAILED TO PLEAD ITS CLAIMS PROPERLY, LEAVE TO AMEND SHOULD BE GRANTED.......................................21

IV.   DEFENDANT IS NOT ENTITLED TO A STAY OF DISCOVERY..............................22

Conclusion ....................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009)..............................................................5

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ...............................................5

Bernard Nat'l Loan Investors, Ltd. v. Traditions Mgmt., LLC, No. 08-3573, 2009
    WL 382720 (S.D.N.Y. Feb. 17, 2009).............................................................5

Bernstein v. Seeman, 601 F. Supp. 2d 555 (S.D.N.Y. 2009) ........................6, 14

Bissinger v. City of New York, No. 06-2325, 2007 WL 2826756
    (S.D.N.Y. Sept. 24, 2007)..............................................................................22

Bridgeway Corp. v. Citibank, N.A., 132 F. Supp. 2d 297 (S.D.N.Y. 2001) .......8

Byrne v. Barrett, 197 N.E. 217 (N.Y. 1935).......................................................19

Carco Group, Inc. v. Maconachy, No. CV 05-6038, 2009 WL 1067026
    (E.D.N.Y. Apr. 21, 2009)..............................................................................16

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002).....................5, 12

City of Pontiac Gen. Employees' Retirement Sys. v. MBIA Inc.,
    300 F. App'x. 33 (2d Cir. 2008) ...................................................................21

Coddington v. Adelphi Univ., 45 F. Supp. 2d 211 (E.D.N.Y. 1999)...................8

Cohen v. LTF Real Estate Co., No. 08-4591, 2009 WL 1373542 (E.D.N.Y.
    May 15, 2009)............................................................................................6, 14

Compagnia Importazioni Esportazioni Rapresentanze v. L-3 Commc'ns Corp.,
    No. 06-3157, 2007 WL 2244062 (S.D.N.Y. July 31, 2007)........................12

Design Strategies, Inc. v. Davis, 384 F. Supp. 2d 649 (S.D.N.Y. 2005).....15, 18

Design Strategies, Inc. v. Davis, No. 02 Civ. 5329, 2004 WL 1394327
    (S.D.N.Y. June 22, 2004)..............................................................................16

Dujardin v. Liberty Media Corp., 359 F. Supp. 2d 337 (S.D.N.Y. 2005) ...........8

E.W. Bruno v. Friedberg, 21 A.D. 2d 336 (1964) .............................................16

Elco Shoe Mfrs. v. Sisk, 183 N.E. 191 (N.Y. 1932) .......................................................18

Eternity Global Master Fund, Ltd. v. Morgan Guar. Trust Co. of N.Y.,
    375 F.3d 168 (2d Cir. 2004)...........................................................................................7

Feiger v. Iral Jewelry, Ltd., 382 N.Y.S.2d 221 (N.Y. App. Div. 1976) ...........................18

Fiero v. Fin. Indus. Regulatory, Auth., Inc., 606 F. Supp. 2d 500 (S.D.N.Y. 2009)...........7

Hachette Distribution, Inc. v. Hudson County News Co., 136 F.R.D. 356
    (E.D.N.Y. 1991)...........................................................................................................23

Henry v. Wyeth Pharm., Inc.
    No. 05-8106, 2007 WL 4526525 (S.D.N.Y. Dec. 19, 2007) ...................................6, 13

IBM v. Bajorek, 191 F.3d 1033 (9th Cir. 1999) .................................................................10

In re Alstom SA Sec. Litig., 406 F. Supp. 2d 402 (S.D.N.Y. 2005)....................................6

In re Currency Conversion Fee Antitrust Litig., No. MDL 1409, 2002 WL 88278
    (S.D.N.Y. Jan. 22, 2002)..............................................................................................24

In re WRT Energy Secs. Litig.
    No. 96-3610, 1996 WL 580930 (S.D.N.Y. Oct. 9, 1996)............................................23

Jiggetts v. Allied Barton Sec. Servs., No. 08-4371, 2009 WL 1953418
    (S.D.N.Y. July 7, 2009) ...............................................................................................23

Kassover v. UBS A.G., No. 08-2753, 2008 WL 5395942 (S.D.N.Y. Dec. 19, 2008).......23

Keeney v. Kemper Nat'l Ins. Cos.
    No. 97-7683, 1998 WL 29815 (2d Cir. Jan. 27, 1998) ................................................14

Liebowitz v. Cornell Univ., 445 F.3d 586 (2d Cir. 2006) ...................................................5

Malmsteen v. Berdon, LLP, 477 F. Supp. 2d 655 (S.D.N.Y. 2007)....................................8

Maritime Fish Prods., Inc. v. World-Wide Fish Prods., Inc., 474 N.Y.S.2d 281
    (N.Y. App. Div. 1984) ..........................................................................................16, 19

Mathis v. United Homes, LLC, 607 F. Supp. 2d 411 (E.D.N.Y. 2009) ...............................5

Meadowbrook-Richman, Inc. v. Associated. Fin. Corp., 253 F. Supp. 2d 666
    (S.D.N.Y. 2003) ...........................................................................................................23

Moran v. Flaherty, No. 92-3200, 1992 WL 276913 (S.D.N.Y. Sept. 25, 1992) ...............23

*Murray v. Beard*, 7 N.E. 553 (1886) ...................................................................................17

*Phansalkar v. Andersen Weinroth & Co., L.P.*
 344 F.3d 184 (2d Cir. 2003)..........................................................15, 16, 17, 19

*Powe v. Cambium Learning Co.*, No. 08-1963, 2009 WL 2001440 (S.D.N.Y.
 July 9, 2009)..............................................................................................6, 13

*Prescient Acquisition Group, Inc. v. MJ Publ'g Trust*, No. 05-6298, 2006
 WL 2136293 (S.D.N.Y. July 31, 2006) ..............................................7, 12

*Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179 (S.D.N.Y. 2000).....................14

*Rivera v. Inc. Vill. of Farmingdale*, No. 06-2613, 2007 WL 3047089
 (E.D.N.Y. Oct. 17, 2007) ..........................................................................24

*Ronzani v. Sanofi S.A.*, 899 F.2d 195 (2d Cir. 1990).........................................................21

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000)...................................................................6

*S.O. Textiles Co. v. A & E Prods. Group, a Div. of Carlisle Plastics, Inc.*,
 18 F. Supp. 2d 232 (E.D.N.Y. 1998) .......................................................22

*South Pierre Assocs. v. Meyers*, 820 N.Y.S.2d 485 (N.Y. Civ. Ct. 2006) ........................18

*Square D. Co. v. Niagara Frontier Tariff Bureau, Inc.*, 760 F.2d 1347
 (2d Cir. 1985)............................................................................................22

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119 (2d Cir. 2005)......................7

*Sullivan & Cromwell LLP v. Charney*, No. 600333/2007, 2007 WL 1240437
 (N.Y. Sup. Ct. Apr. 30, 2007).................................................................20

*Turner v. Kouwenhoven*, 2 N.E. 637 (1885) ......................................................................17

*Veritas Capital Mgmt. LLC v. Campbell*, No. 650058/08, 2008 WL 5491146
 (N.Y. Sup. Ct. Nov. 24, 2008) .................................................................21

*Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375 (2d Cir. 1995)....................................6

*Webb v. Robert Lewis Rosen Assocs., Ltd.*, No. 03-4275, 2003 WL 23018792
 (S.D.N.Y. Dec. 23, 2003)..........................................................................15

*Wechsler v. Bowman*, 285 N.Y. 284 (1941)........................................................................16

**Statutes & Rules**

Fed. R. Civ. P. 8(a)(2) ................................................................................5

Federal Rule of Civil Procedure 8(a) ...................................................5, 13

Federal Rule of Civil Procedure 12(b)(6) ...................................................1

Federal Rule of Civil Procedure 15(a) .......................................................21

Federal Rule of Civil Procedure 26(c) .......................................................23

Local Rule 37.2 ...........................................................................................23

Rules 26 ......................................................................................................23

Rule 26(b)(1) ...............................................................................................24

Rule 37.2 of the Local Rules of the United States District Court for the
   Southern District of New York ..............................................................23

**Other Authorities**

Restatement (Third) of Agency § 8.01 (2006) .......................................16, 17

Plaintiff International Business Machines Corporation ("IBM" or "the Company") respectfully submits this memorandum of law in opposition to Defendant's motion to dismiss Counts III and IV of IBM's Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and to stay discovery with regard to Counts III and IV of IBM's Amended Complaint pending resolution of this motion (the "Motion" or "Mot. Dis.").

## PRELIMINARY STATEMENT

During the course of expedited preliminary discovery in this matter, IBM uncovered a concerted pattern of misuse of its resources and confidential information by Mr. Johnson ("Defendant") in pursuit of his own financial interests in violation of his legal and contractual duties to IBM. IBM amended its complaint on the basis of that newly discovered information to include an expanded claim for misappropriation, as well as new claims for breach of contract and breach of duty. Now, after continually refusing to produce responsive documents regarding his demonstrated malfeasance, Defendant seeks not only to dismiss IBM's new claims, but also to stay all further discovery into those issues. As set forth below, Defendant's efforts to thwart litigation of his misconduct must fail.

First, IBM's Amended Complaint adequately alleges that Defendant breached at least the following contracts: the Long-Term Performance Plan ("LTPP") and related agreements and the Agreement Regarding Confidential Information and Intellectual Property ("Confidentiality Agreement"). IBM alleges that Defendant has breached the LTPP in accepting his position at Dell Inc. ("Dell"), thereby entitling IBM to a rescission of his equity awards exercised or paid within the last 12 months and to cancelation of any outstanding awards whether

vested or unvested. IBM also alleges that Defendant has breached the Confidentiality Agreement along with numerous provisions of the LTPP in creating and promoting JSJ Capital Management LLC ("JSJ"), a venture capital firm focused on technology investments. Contrary to Defendant's contention, IBM's allegations are not conclusory, but are adequately pled in the Amended Complaint and sufficient to support its breach of contract claim.

Second, IBM's Amended Complaint sufficiently alleges that Defendant's conduct amounts to a breach of his duty of loyalty to IBM. Defendant's use of IBM's resources, employees, contacts and confidential information in secretly building JSJ constitutes a flagrant disloyalty. It is that disloyalty itself which bars him from retaining his compensation, and it is irrelevant whether Defendant succeeded in diverting business from IBM or made his own profits during the period of his disloyalty.

Third, even if IBM has failed to allege its claims properly for breach of contract and breach of duty (which it has not), IBM should be allowed to cure any defect by amending its complaint. Defendant has not shown, nor could he show, that the purported defects in IBM's claims cannot be cured by an amendment.

Fourth, Defendant's request for a stay of discovery is unwarranted. Such a stay of discovery is plainly inappropriate where, as here, the disputed claims are heavily fact dependant and the motion to dismiss is neither premised on legal issues nor would be dispositive of all claims even if granted. The discovery that Defendant now seeks to avoid is relevant not only to the claims that Defendant has moved to dismiss, but also to claims against which he has not moved.

## STATEMENT OF RELEVANT FACTS

### A.      The Initial Complaint and Preliminary Injunction Motion

On May 19, 2009, Defendant informed IBM that he would leave the Company on

June 1, 2009, and assume the position of Senior Vice President of Corporate Strategy at Dell.

On May 21, 2009, IBM filed a complaint seeking enforcement of a noncompetition agreement

signed by Defendant in 2005, which precluded him from commencing employment for a

competitor within 12 months of his departure from IBM (the "Noncompetition Agreement").

IBM promptly moved for a preliminary injunction enjoining Defendant from working at Dell in

violation of his Noncompetition Agreement.  By order of the Court, the parties engaged in

preliminary, expedited discovery regarding IBM's motion.

### B.      Expedited Discovery

On June 3, 2009, IBM served its first set of requests for the production of

documents ("IBM's June 3 Requests").  In addition to any Dell-related documents in

Defendant's possession, IBM's June 3 Requests asked for the production of "all documents or

communications" "relating to any actual or potential employment" "by any entity other than

IBM".  Defendant did not produce a single document responsive to this request.

Immediately upon receiving the password to the laptop that Defendant had used

while an IBM employee, IBM began reviewing the hundreds of thousands of pages of electronic

material stored on the hard-drive of that laptop.  IBM also immediately began reviewing the tens

of thousands of pages of hard copy material that Defendant left in his office and the tens of

thousands of emails associated with Defendant on IBM's email servers.  While reviewing those

materials, IBM discovered that Defendant had, for at least four years, sought employment with

and funding for a private equity venture focused on investments in the technology sector called

JSJ Capital Management LLC.  On June 9, 2009—within a week of receiving the password to Defendant's computer from Defendant—IBM began the production of more than 400,000 pages of documents from Defendant's files, including those related to JSJ.

Based on information learned during expedited discovery, IBM served third-party subpoenas on:  JSJ and Erik Jansen—the other "J" of JSJ—on June 19; Boon Sim—the "S" of JSJ—on June 22; and Kumar Sanjay—another IBM employee involved with JSJ—on July 1.  To date, each of the individuals or entities subpoenaed, except Boon Sim, has refused to produce any responsive documents.

### C.   The Amended Complaint

On June 24, 2009, IBM amended its complaint to include claims for breach of contract and breach of duty, and to revise its claim for misappropriation of trade secrets.  IBM's amendment was a direct result of the documents concerning JSJ uncovered during preliminary discovery.

The Amended Complaint alleges that Defendant breached at least the following contracts:  (1) the plans governing his equity based compensation (see Am. Compl. ¶ 27) and (2) the Confidentiality Agreement (id. ¶ 25).  The principal agreement concerning equity compensation, the 2001 Long-Term Performance Plan, provides, inter alia, that Defendant must refrain from working for a competitor, cannot disclose IBM confidential information and trade secrets, cannot at any time engage in activity that conflicts with the interests of IBM and cannot hire or solicit IBM employees or customers.  By accepting his equity awards pursuant to the 2001 LTPP, Defendant also agreed to the terms of the Stock Option Award Agreement (the "Award Agreement"), which provides for similar restrictive covenants.  (Declaration of Kevin J.

Orsini, dated July 31, 2009 ("Orsini Decl."), Exhibit 1.)  IBM alleges that Defendant violated his

obligations under those contracts.  (<u>Id.</u> ¶¶ 25, 27, 51, 62, 63)

 The Amended Complaint also alleges that Defendant's actions amounted to a

breach of the duty of loyalty owed to IBM, and that IBM is entitled to recover the compensation

it provided to its faithless employee.  (<u>Id.</u> ¶¶ 65-72.)

**ARGUMENT**

 Federal Rule of Civil Procedure 8(a) requires that a party assert "a short and plain

statement of the claim showing that the pleader is entitled to relief". Fed. R. Civ. P. 8(a)(2).  "A

plaintiff is required only to give a defendant fair notice of what the claim is and the grounds upon

which it rests." <u>Bernard Nat'l Loan Investors, Ltd. v. Traditions Mgmt., LLC</u>, No. 08-3573,

2009 WL 382720, at *2 (S.D.N.Y. Feb. 17, 2009) (quoting <u>Liebowitz v. Cornell Univ.</u>, 445 F.3d

586, 591 (2d Cir. 2006)). "[O]nce a claim has been stated adequately, it may be supported by

showing any set of facts consistent with the allegations in the complaint." <u>Bell Atl. Corp. v.</u>

<u>Twombly</u>, 550 U.S. 544, 563 (2007). A "heightened fact pleading of specifics" is not required,

and a motion to dismiss may not be granted if a complaint includes "enough facts to state a claim

to relief that is plausible on its face". <u>Id.</u> at 570. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).

 In reviewing a motion to dismiss, courts construe the complaint liberally, accept

all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. <u>See, e.g.,</u>

<u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152 (2d Cir. 2002). "[T]he issue is not whether a

[] plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support

the claims." <u>Mathis v. United Homes, LLC</u>, 607 F. Supp. 2d 411, 418 (E.D.N.Y. 2009) (quoting

-5-

Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995)). "[C]laims for breach of contract and breach of the duty of loyalty are not subject to a heightened pleading standard, and a motion to dismiss is not the proper stage at which to resolve factual disputes." Bernstein v. Seeman, 601 F. Supp. 2d 555, 556 (S.D.N.Y. 2009).

Moreover, in adjudicating a motion to dismiss, the Second Circuit "has deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference, as well as . . . documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit". In re Alstom SA Sec. Litig., 406 F. Supp. 2d 402, 407-08 (S.D.N.Y. 2005) (quoting Rothman v. Gregor, 220 F.3d 81, 89 (2d Cir. 2000)) (internal citations omitted); see also Cohen v. LTF Real Estate Co., No. 08-4591, 2009 WL 1373542, at *3 (E.D.N.Y. May 15, 2009). In reviewing the allegations of an amended complaint, a court is required to examine all of the allegations therein and not those solely under the heading of a specific count or claim. Powe v. Cambium Learning Co., No. 08-1963, 2009 WL 2001440, at *5 (S.D.N.Y. July 9, 2009) ("The Amended Complaint was plainly intended to integrate all of the allegations therein . . . . It would be 'excessively formalistic' to ignore any allegations in the Amended Complaint based on the heading under which they fall."); see also Henry v. Wyeth Pharm., Inc., No. 05-8106, 2007 WL 4526525, at *6 (S.D.N.Y. Dec. 19, 2007).

I.    **IBM HAS PROPERLY ALLEGED A CLAIM FOR BREACH OF CONTRACT.**

To assert a claim for breach of contract, a plaintiff must allege "(1) the existence of an agreement, (2) adequate performance of the agreement by the plaintiff, (3) a breach of the contract by the defendant, and (4) damages". Prescient Acquisition Group, Inc. v. MJ Publ'g Trust, No. 05-6298, 2006 WL 2136293, at *3 (S.D.N.Y. July 31, 2006) (quoting Eternity Global Master Fund, Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004)).  The Court "should resolve any contractual ambiguities in favor of the plaintiff". Fiero v. Fin. Indus. Regulatory, Auth., Inc., 606 F. Supp. 2d 500, 513 (S.D.N.Y. 2009) (quoting Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005)).

In the Motion, Defendant argues that IBM's complaint should be dismissed because he claims that:  (1) IBM has not sufficiently pled the existence of the contract terms it alleges were breached; and (2) Defendant's alleged conduct did not constitute a breach of the LTPP.  (Mot. Dis. 9-11.)  Each argument fails.

A.    **IBM Adequately Pled the Existence of At Least Two Separate Contracts in Count III.**

Although Defendant addresses only the 2001 Long-Term Performance Plan in the Motion, Count III also alleges a breach of the Confidentiality Agreement (Am. Compl. ¶ 25). The Confidentiality Agreement and the LTPP are identified in the Amended Complaint (see id. ¶¶ 25, 27, 48, 51, 62, 63), and the allegations relevant thereto are incorporated into Count III (id. ¶ 61).

Indeed, Defendant's responsive pleadings indicate that he has the requisite notice of each of those contracts.  For example, Defendant himself attached the LTPP to the Motion (Solfanelli Decl. Ex. 2), and his arguments in support of his request that the Court dismiss Count

III specifically reference the terms thereof.  Defendant also admits in his Answer that he received various equity awards from IBM (Answer ¶ 28) and that those awards were subject to various restrictions (id. ¶ 27).  The LTPP that Defendant submitted also incorporates IBM's Business Conduct Guidelines ("BCGs") (which were explicitly referenced in the Amended Complaint (Am. Compl. ¶ 48)), and the LTPP provides that Defendant's equity awards were subject to his adherence to the terms of those guidelines as well (see id. ¶¶ 26-27, 62-63).  Similarly, Defendant admits in his answer that he executed the Confidentiality Agreement that was attached to the Amended Complaint.  (Answer ¶ 25.)

Thus, IBM adequately pled the first element of its breach of contract claim in the Amended Complaint.  See Dujardin v. Liberty Media Corp., 359 F. Supp. 2d 337, 357 n.8 (S.D.N.Y. 2005) (stating that in order to show the existence of a contract "[u]nder the relaxed pleading requirements applicable in federal court . . . it is enough that plaintiff comply with the requirement that the pleading put defendant on notice of the grounds for which plaintiff seeks relief") (citing Coddington v. Adelphi Univ., 45 F. Supp. 2d 211, 218 (E.D.N.Y. 1999)(alterations in original)).  See also Bridgeway Corp. v. Citibank, N.A., 132 F. Supp. 2d 297, 305 (S.D.N.Y. 2001) ("Plaintiff must simply provide a short and plain statement of the claim showing that it is entitled to relief." (internal quotation marks and citation omitted)).[1]

---

[1] Defendant cites one case, Malmsteen v. Berdon, LLP, 477 F. Supp. 2d 655, 666 (S.D.N.Y. 2007), for the proposition that IBM was required to identify the specific provisions of each contract at issue.  However, the court there states that a "plaintiff must disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery".  Id. (internal quotations omitted).  In Malmsteen, the court dismissed the contract claim (with leave to replead) because the plaintiff had not referenced any contract in support of that claim and it was unclear whether there was such a contract or, instead, whether the plaintiff was improperly trying to convert a tort claim into a separate contract claim.

**B.**    **IBM Sufficiently Alleges That Defendant's Conduct Breached His Contractual Obligations.**

IBM also adequately pled facts to support its claim that Defendant breached his contractual obligations to IBM.  Defendant's arguments to the contrary are premised upon an improperly narrow focus on a single paragraph of IBM's Amended Complaint and fail to account for the totality of IBM's claims.  As set forth below, IBM has adequately pled that Defendant: (1) breached the terms of the LTPP (and potentially his Confidentiality Agreement) by taking employment with Dell; and (2) breached the terms of the LTPP and his Confidentiality Agreement through his actions in furtherance of JSJ.

   i    Defendant Breached the LTPP and the Award Agreement by Accepting Employment at Dell and Soliciting Employees.

Defendant argues that IBM has failed to state a breach of contract claim pursuant to the LTPP because he claims that "[t]here is nothing in the plan documents governing the Programs . . . that imposes on Mr. Johnson an obligation to refrain from working for a competitor after leaving IBM".  (Mot. Dis. 5.)  That argument is wrong.

The LTPP provides that an employee who accepts equity awards may not engage in any "Detrimental Activity", which includes "the rendering of services for any organization or business engaging directly or indirectly in any business which is or becomes competitive with the Company".  (LTPP at 7; see also Am. Compl. ¶ 27.)  If an employee violates that prohibition, IBM is entitled to rescission of any equity awards that the employee exercised within the preceding 12 month period and cancelation of any outstanding equity awards.  (Am. Compl. ¶ 27.)

The Ninth Circuit has explained that this forfeiture clause applies to circumstances like those presented here where an employee leaves IBM and takes a position with

-9-

a competitor. See IBM v. Bajorek, 191 F.3d 1033, 1040 (9th Cir. 1999). That forfeiture provision is separate and distinct from any noncompetition agreement.[2] See id. at 1040-41. Defendant has admitted that he accepted equity awards from IBM. (Answer ¶ 28.) He has also admitted that the LTPP provided terms and conditions to the acceptance of those awards. (See id. ¶ 27; Mot. Dis. 4-5, 10.) In fact, Defendant has already acknowledged in the Motion, and in sworn testimony before this Court, that IBM is entitled to "claw back" certain of those awards based on the fact that he has now taken employment with Dell. (Mot. Dis. 4-5, 10.) The basis for that right is the LTPP, which is exactly what IBM alleges in Count III.

      ii      <u>Defendant's Conduct Regarding JSJ Breached Terms of Various Contracts with IBM.</u>

In focusing only upon Paragraph 62 of the Amended Complaint, Defendant ignores IBM's allegations that his conduct relating to JSJ breached the LTPP and the Confidentiality Agreement. IBM has adequately pled each of those breaches. As referenced above, the LTPP prohibits an employee from engaging in any "Detrimental Activity". The definition of "Detrimental Activity" is not limited solely to accepting employment with a competitor either during or following employment with IBM; it also includes:

> • "[T]he disclosure to anyone outside the Company . . . of any confidential information or material, as defined in the Company's Agreement Regarding Confidential Information and Intellectual Property [Confidentiality Agreement];"

---

[2] As the Court is aware, the equity awards that Defendant accepted in 2005 and 2006 were also conditioned upon his acceptance of a noncompetition agreement. While IBM continues to believe that Mr. Johnson did accept that agreement, and expects to be able to prove that at trial, IBM also would be entitled to recover those 2005 and 2006 equity awards in the event that Mr. Johnson prevails on his argument that he never accepted a noncompetition agreement.

- "[A] violation of any rules, policies, procedures or guidelines of the Company, including but not limited to the Company's Business Conduct Guidelines [BCGs];"

- "[A]ny attempt directly or indirectly to induce any employee of the Company to be employed or perform services elsewhere or any attempt directly or indirectly to solicit the trade or business of any current or prospective customer, supplier or partner of the Company;" and

- "[A]ny other conduct or act determined to be injurious, detrimental or prejudicial to any interest of the Company."

(Solfanelli Decl. Ex. 2.)

By accepting his equity awards pursuant to the LTPP, Defendant also agreed to additional terms set forth in the Award Agreement, which provides, _inter alia_, that Defendant cannot "directly or indirectly" "hire, solicit or make an offer to any employee of the Company" "to be employed or perform services outside the Company". (Orsini Decl. Ex. 1.)

The Confidentiality Agreement that Defendant signed in 1981, which is referenced in the above-quoted provisions of the LTPP and was attached to the Amended Complaint, similarly prohibits employees from "disclos[ing] to anyone outside of IBM . . . any confidential information or material of IBM". (Am. Compl. ¶ 25.) Finally, the terms of the IBM BCGs (which are incorporated into the LTPP and identified in the Amended Complaint) provide:

- "If you leave the company for any reason, including retirement, you must return all IBM property, . . . and you may not disclose or use IBM proprietary information, including IBM confidential information."

- "Because IBM is rapidly expanding into new lines of business and new areas of interest, . . . [i]t is unlikely that you will find definitive answers to many of your questions regarding the boundaries of acceptable activity in published guidelines. It is therefore your responsibility to consult with your management or IBM counsel to determine whether your planned activity will compete with any of IBM's actual or potential businesses."

- "You may not perform non-IBM work or solicit such business on IBM premises or while working on IBM time . . .. Also, you are not permitted to use IBM assets, including equipment, telephones, materials, resources or proprietary information for any outside work."

- "You should not have a financial interest in any organization that IBM does business with or competes with if that interest would give you or would appear to give you a conflict of interest with IBM. . . . Financial interests in competitors usually will present a conflict of interest."

(Orsini Decl. Ex. 2.)[3]

   IBM alleges that Defendant's conduct relating to JSJ constituted a breach of those contracts. As alleged in the Amended Complaint, IBM uncovered during preliminary discovery "a concerted pattern of misuse of IBM's resources and IBM's confidential information by Mr. Johnson in pursuit of his own financial interests" by creating and promoting JSJ. (Am. Compl. ¶ 40.) Because JSJ competed in the same sector as IBM, Defendant's involvement with that organization "constituted a flagrant conflict of interest" (id. ¶ 49), particularly given that Defendant, as Vice President of Corporate Development, played an active role in IBM's strategic planning and possessed "information regarding where and in what companies and technologies IBM will invest" (id. ¶ 12; see also id. ¶¶ 9-10). Furthermore, in JSJ presentations, Defendant identified "potential targets for investment [which] were the very same

---

  [3] As Defendant acknowledged, the specific terms and provisions of the contracts referenced in IBM's Amended Complaint are integral to that complaint and form the basis for the Court's consideration of this Motion. See Mot. Dis. 5 n.4 ("Documents that set forth the terms and conditions of the Programs that IBM alleges Mr. Johnson breached may be considered on this motion.") This Court may consider those terms, as well as the terms of any other documents to which IBM referred in the Amended Complaint, in deciding the Motion. See Chambers, 282 F.3d 147 at 152-53 (noting that if a complaint "relies heavily upon [a contract's] terms and effect", the contract is "render[ed] [a] document integral to the complaint"); Compagnia Importazioni Esportazioni Rapresentanze v. L-3 Commc'ns Corp., No. 06-3157, 2007 WL 2244062, at *4 (S.D.N.Y. July 31, 2007) (finding that because "the Amended Complaint is replete with references to contracts and requests judicial interpretation of their terms", the court should consider them in reviewing the motion to dismiss "in addition to the allegations of the complaint itself" (alterations in original)); Prescient Acquisition Group, 2006 WL 2136293 at *3 ("The [c]ourt may consider documents integral to the complaint without converting the motion to one for summary judgment.").

areas that Mr. Johnson identified in his own internal IBM self-evaluation as key areas with

respect to which he was leading significant strategic initiatives on IBM's behalf". (Id. ¶ 49.) In

those same presentations, Defendant represented that JSJ possessed "a strong pipeline of

proprietary deal flow" as well as "technology experience and insights". (Id. ¶ 44.) Defendant

gained all of that knowledge through his employment by IBM. (Id.)

   IBM also alleges that Defendant violated his contractual obligations to IBM

because he "relied on extensive work done by at least one other IBM employee" in creating JSJ

(id. ¶ 42), made promises to recruit at least one additional IBM employee to leave IBM and work

for JSJ (id. ¶ 44), "devoted significant time during regular work hours" in promoting JSJ and

improperly utilized IBM resources and facilities (id. ¶¶ 43-48). Defendant also "used an IBM

funded trip in the Middle East in an effort to cultivate potential investors for JSJ" (id. ¶ 45) and

"contemplated the use of contacts made during that trip . . . to develop further sources of funding

for JSJ" (id. ¶ 46). Contrary to the requirements of the BCGs (compliance with which is a term

of the LTPP), Defendant never disclosed his financial interests in JSJ to IBM, which would have

allowed IBM to determine whether those actions were "detrimental activit[ies]". (LTPP at 7; see

also Am. Compl. ¶ 27.)

   Each of these factual allegations is incorporated into Count III of the Amended

Complaint (see id. ¶ 61) and, therefore, must be analyzed to determine whether IBM has met the

requirements of Rule 8(a). Powe, 2009 WL 2001440 at *5 ("The Amended Complaint was

plainly intended to integrate all of the allegations therein . . . . It would be 'excessively

formalistic' to ignore any allegations in the Amended Complaint based on the heading under

which they fall."); see also Henry, 2007 WL 4526525 at *6 ("To dismiss some of plaintiff's

claims because of the heading under which they were listed in the Complaint would surely violate the command of the Federal Rules of Civil Procedure that pleadings must be construed so as to do justice." (internal quotations and alterations omitted)).  Accepting those allegations as true, which the Court is required to do in analyzing this motion, IBM has adequately pled that Defendant's JSJ-related conduct breached the terms of the LTPP and the Confidentiality Agreement.  Defendant's motion must, therefore, be denied.  <u>Cohen</u>, 2009 WL 1373542 at *4 ("Accepting the allegations in the complaint as true and drawing all reasonable inferences therefrom in favor of plaintiffs, a plausible breach of contract claim has been asserted that survives a motion to dismiss."); <u>see also</u> <u>Bernstein</u>, 601 F. Supp. at 556 (denying a motion to dismiss because the party "fulfilled its duty to present a short and plain statement of the claim showing that the pleader is entitled to relief") (internal quotation marks and citation omitted).

Defendant's reliance on <u>Rapoport</u> and <u>Kenney</u> does not support the dismissal of Count III.  In each of those cases, the document plaintiff relied on explicitly contradicted plaintiff's claim.  <u>See</u> <u>Rapoport v. Asia Elecs. Holding Co.</u>, 88 F. Supp. 2d 179, 184-85 (S.D.N.Y. 2000) (dismissing claim because the article plaintiff cited to support its allegations contradicted those allegations); <u>Keeney v. Kemper Nat'l Ins. Cos.</u>, No. 97-7683, 1998 WL 29815, at *1 (2d Cir. Jan. 27, 1998) (dismissing claim because plaintiff's argument was contrary to explicit terms of the contract).  Defendant has not argued, nor could he argue, that the contracts at issue here explicitly condone the conduct that he concealed from IBM.

**II.**     **IBM HAS PROPERLY ALLEGED A CLAIM FOR BREACH OF DUTY.**

The fourth count of IBM's complaint is rooted in Defendant's duty of loyalty to
IBM. Defendant argues that this count must be dismissed because he claims that IBM has made
no "allegations that support a claim that Defendant was disloyal by virtue of his activities related
to JSJ". (Mot. Dis. 15.) However, as set forth below, Defendant's arguments are premised on a
mischaracterization of New York law regarding the duties that an employee owes to a current
and former employer.

**A.**     **Defendant Misstates the Applicable Law.**

Defendant argues that IBM's claim should be dismissed because the faithless
employee doctrine requires proof that he diverted corporate opportunities to IBM's detriment or
that he otherwise profited from his disloyal service. (Id. at 12.) However, there is no
requirement of harm to the employer, or profit by the employee, where, as here, the claim is
premised on the faithless servant doctrine rather than a breach of fiduciary duty. Whereas
proving "a breach of fiduciary duty claim requires a showing of damages[,] the faithless servant
doctrine[] provides an additional mechanism for relief, notwithstanding that [the employer]
suffered no damage." Webb v. Robert Lewis Rosen Assocs., Ltd., No. 03-4275, 2003 WL
23018792, at *5-6 (S.D.N.Y. Dec. 23, 2003); see also Design Strategies, Inc. v. Davis, 384 F.
Supp. 2d 649, 660 (S.D.N.Y. 2005). Thus, "[o]ne who owes a duty of fidelity to a principal and
who is faithless in the performance of his services is generally disentitled to recover his
compensation, whether commissions or salary." Phansalkar v. Andersen Weinroth & Co., L.P.,
344 F.3d 184, 200 (2d Cir. 2003) (internal citations omitted). "It does not make any difference
that the services were beneficial to the principal, or that the principal suffered no provable

damage as a result of the breach of fidelity by the agent." Id. (internal quotations marks and citations omitted).

The purpose of the doctrine is not to dissolve the "well established" boundaries of an employee's fiduciary duty, Design Strategies, Inc. v. Davis, No. 02 Civ. 5329, 2004 WL 1394327, at *4 (S.D.N.Y. June 22, 2004), but to provide a remedy for an employer in the case where an employee breaches the duty he owes and "it is difficult to prove that harm resulted from the breach or . . . the [employee] realizes no profit through the breach". Restatement (Third) of Agency § 8.01 (2006). This doctrine is founded upon New York's recognition that an employee "is obligated to be loyal to his employer and is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." Phansalkar, 344 F.3d at 200 (internal quotations marks omitted); see also Maritime Fish Prods., Inc. v. World-Wide Fish Prods., Inc., 474 N.Y.S.2d 281, 285 (N.Y. App. Div. 1984). "[A] trusted employee is held, not to the standards of the market place, but to *uberrima fides*." Maritime Fish Prods. 474 N.Y.S.2d at 286. In fact, it is not enough that an employee "merely refrain from harming his employer. He ha[s] an affirmative duty at all times to act in his employer's best interests". Id. (citing Wechsler v. Bowman, 285 N.Y. 284, 291-92 (1941); E.W. Bruno v. Friedberg, 21 A.D. 2d 336, 340 (1964)) (internal citation omitted).

Applying the faithless servant doctrine, courts have developed "two different standards to determine whether an employee's misbehavior warrants forfeiture." Phansalkar, 344 F.3d at 201; see also Carco Group, Inc. v. Maconachy, No. CV 05-6038, 2009 WL 1067026, at *22 (E.D.N.Y. Apr. 21, 2009). Under the first standard, enunciated by the Court of Appeals in

-16-

Turner v. Kouwenhoven, 2 N.E. 637, 639 (1885), "a disloyal employee forfeits promised compensation only when the misconduct and unfaithfulness substantially violates the contract of service". Phansalkar, 344 F.3d at 201 (internal citations and quotation marks omitted). "Lower New York courts have followed Turner's dictum and found agents' disloyalty to be 'substantial' in a variety of circumstances. They have found disloyalty not to be 'substantial' only where the disloyalty consisted of a single act, or where the employer knew of and tolerated the behavior." Id. at 201-02 (internal citations omitted). Under the second standard, enunciated by the Court of Appeals in Murray v. Beard, 7 N.E. 553, 554 (1886), "[a]n agent is held to uberrima fides in his dealings with his principal, and if he acts adversely to his employer in any part of the transaction, or omits to disclose any interest which would naturally influence his conduct in dealing with the subject of the employment, it amounts to such a fraud upon the principal, as to forfeit any right to compensation for services". Phansalkar, 344 F.3d at 201 (internal citations and quotation marks omitted).[4]

### B.   IBM Adequately Pled That Defendant Was a Faithless Servant.

As explained above, the purpose of the faithless-servant doctrine is to provide employers with a remedy in situations where, inter alia, "the [employee] realizes no profit through the breach." Restatement (Third) of Agency § 8.01 (2006). The "agent's very act of disloyalty and not any resultant business loss by the principal may be sufficient to forfeit the agent's right to compensation for the period of disloyalty. [. . .] The overriding consideration patently suggests that it is the disloyalty itself and not its consequences to the employer or

---

[4] In Phansalkar, the Second Circuit did not attempt to reconcile these two standards because it determined that the employee's behavior warranted forfeiture under either rule. See id. at 202.

-17-

principal which is to be condemned." <u>South Pierre Assocs. v. Meyers</u>, 820 N.Y.S.2d 485, 489-90 (N.Y. Civ. Ct. 2006) (quoting <u>Feiger v. Iral Jewelry, Ltd.</u>, 382 N.Y.S.2d 221, 222-23 (N.Y. App. Div. 1976)).  IBM has plainly pled facts which, if true, support its claim for breach of duty.  While IBM paid Defendant millions of dollars in compensation to be its trusted and devoted servant and to act always in its best interests, Defendant instead actively misused IBM's resources and confidential information to start his own private company.

IBM's Amended Complaint contains numerous factual allegations that JSJ was a competing venture.  As alleged in the Amended Complaint, JSJ's stated purpose, seeking investment in technology-focused companies, is precisely what IBM's Corporate Development Group did under Defendant's stewardship.  (<u>See</u> Am. Compl. ¶¶ 12, 41, 49.)  Indeed, "[m]any of the emerging areas in the technology sector that were identified in JSJ presentation materials as potential targets for investment were the very same areas that Mr. Johnson identified in his own internal IBM self-evaluation as key areas with respect to which he was leading significant strategic initiatives on IBM's behalf."  (<u>Id.</u> ¶ 49.)  Therefore, IBM adequately pleads that JSJ was IBM's competitor.  <u>See</u> <u>Design Strategies</u>, 384 F.Supp.2d at 660 (explaining that the question of whether two entities are competitors "for purposes of determining whether an employee has breached his duty of loyalty" "was not so much a technical definition of the word 'competition' . . . as it was a question of loyalty and fair dealing" (quoting <u>Elco Shoe Mfrs. v. Sisk</u>, 183 N.E. 191, 192 (N.Y. 1932)).

The Amended Complaint also contains a series of factual allegations that support IBM's claim that Defendant's conduct in furtherance of JSJ violated his duty of loyalty.  IBM alleges that "Mr. Johnson exploited IBM's business networks and connections for his private

venture, impairing his ability to act loyally and in good faith as one of IBM's chief negotiators."
(Am. Compl. ¶ 70.) IBM also alleges that Defendant actively sought investments from foreign
sovereign-wealth funds for his own benefit instead of IBM's, diverted his valuable time on
company-funded trips to attempt his own private fund-raising, and used IBM resources to create
presentations containing and reflecting the company's confidential information in support of JSJ
investment efforts. (Id. ¶¶ 44, 45, 47.) IBM also alleges that "Mr. Johnson's work on behalf of
JSJ . . . constituted a flagrant conflict of interest". (Id. ¶ 49.)

Moreover, contrary to Defendant's contention, IBM explicitly alleges the "misuse
of IBM's . . . confidential information by Mr. Johnson in pursuit of his own financial interests".
(Am. Compl. ¶ 40.) IBM also alleges that "[i]n furtherance of [JSJ], Mr. Johnson relied upon
extensive work done by at least one other IBM employee." (Id. ¶ 42.) These factual allegations
support IBM's claim for breach of duty because an employee cannot "use his principal's time,
facilities or proprietary secrets to build the competing business." Maritime Fish Prods., 474
N.Y.S.2d at 285-86. "[T]he duty of an agent or employee not to use confidential knowledge
acquired in his employment in competition with his principal is implicit in the relation. It exists
as well after the employment is terminated as during its continuance. It is an absolute and not a
relative duty." Byrne v. Barrett, 197 N.E. 217, 218 (N.Y. 1935) (citations omitted).

Taken together and accepted as true, these factual allegations support a claim that
Defendant's dishonest dealing "permeate[d] [his] service in its most material and substantial
part". Phansalkar, 344 F.3d at 201 (citations omitted; alterations in original). Defendant's
arguments to the contrary, which are premised primarily on the claim that Defendant did not
make any profits or harm IBM in pursuit of JSJ, are unavailing. As explained above, New York

courts have affirmed that a breach of an employee's duty of loyalty does not require any harm to the employer or any profit to the employee and, therefore, Defendant's argument that JSJ was never "created" is legally irrelevant.[5]

Defendant's reliance on <u>Sullivan & Cromwell LLP v. Charney</u>, No. 600333/2007, 2007 WL 1240437, at *5 (N.Y. Sup. Ct. Apr. 30, 2007), for the proposition that the duty of loyalty should be "limited to cases where the employee, acting as the agent of the employer, unfairly competes with his employer, diverts business opportunities to himself or others to the financial detriment of the employer, or accepts improper kickbacks" is similarly misplaced. (Mot. Dis. 12.)  In <u>Charney</u>, a law firm alleged a breach of fiduciary duty against a former associate who had publicly disclosed sensitive client-related information in a discrimination lawsuit he filed against the firm.  The firm attempted to base that claim on "an amalgamation of an attorney's ethical violations and an employee's duty of loyalty to his employee".  <u>Id.</u>, 2007 WL 1240437, at *5.  The language Defendant quotes from <u>Charney</u> is a general description of the duty of loyalty, intended to illustrate how starkly inapposite those cases were to the situation in <u>Charney</u>.  After describing a few cases involving the secretive and self-serving business activities of disloyal employees, the court stated that "[n]o analogous allegation of disloyalty has been made against Charney".  <u>Id.</u>, at *6.  That was because Charney had not sought to use his former employer's confidential information to start his own competing enterprise, nor had he used company resources to solicit capital or seek out investment opportunities for himself.  Here,

---

[5] That argument is also unconvincing.  The fact that JSJ was never able to make any investments does not mean that it was never "created".  IBM has alleged that JSJ was very much alive and operating while Defendant was an employee of IBM.  Members of JSJ actively researched investment opportunities, sought out potential investors and created detailed presentations and other documents with the JSJ logo.  (Am. Compl. ¶¶ 44-45.)

IBM has alleged exactly the type of conduct that the <u>Charney</u> court found absent and, in any event, IBM is seeking to recover Defendant's compensation on the basis of the faithless servant doctrine.[6]

## III.    IF THE COURT CONCLUDES THAT IBM FAILED TO PLEAD ITS CLAIMS PROPERLY, LEAVE TO AMEND SHOULD BE GRANTED.

As set forth above, IBM adequately pled Counts III and IV and, therefore, Defendant's Motion should be denied.  However, even if the Court were to conclude that IBM has not sufficiently pled either or both counts to withstand a motion to dismiss, IBM should be granted leave to amend its complaint.

Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires."  <u>See, e.g.</u>, <u>Ronzani v. Sanofi S.A.</u>, 899 F.2d 195, 198 (2d Cir. 1990) (holding that a district court's grant of motion to dismiss without leave to amend complaint, as requested in opposition papers, was an abuse of discretion); <u>City of Pontiac Gen. Employees' Retirement Sys. v. MBIA Inc.</u>, 300 F. App'x. 33, 34 (2d Cir. 2008) (noting the principle that requests for leave to amend a complaint in opposition to a motion to dismiss should be "freely given").

The Second Circuit has explained that a court should deny a party's request to amend a complaint only if the court concludes that, regardless of any proposed change, the

---

[6] <u>Veritas Capital Mgmt. LLC v. Campbell</u>, No. 650058/08, 2008 WL 5491146, at *11 (N.Y. Sup. Ct. Nov. 24, 2008), does not support Defendant's position for the same reasons.  That case also analyzed a claim that required proof of the diversion of corporate opportunities, which is not required to support IBM's claim here.  <u>Veritas</u> is also factually distinguishable because in that case the court found that the initial terms of the defendant's employment authorized his making personal investments on his own time, and plaintiff "[did] not allege that [defendant] was creating a competing investment fund, or that he improperly used plaintiffs' time, resources, or confidential information to create a competing business."  <u>Id.</u>, at *10.  IBM, by contrast, has alleged all of these things.  (See Am. Compl. ¶¶ 44-45.)

amended complaint will not be able to state a claim. See Square D. Co. v. Niagara Frontier Tariff Bureau, Inc., 760 F.2d 1347, 1366 (2d Cir. 1985) ("[A]mendment should be refused only if it appears to a certainty that plaintiff cannot state a claim.").

Here, Defendant's Motion is based entirely on arguments that IBM has not alleged facts that support its claims. Not one of Defendant's arguments, even if accepted, would establish that IBM could not plead a claim that would entitle it to relief as a matter of law. If required to amend its complaint, IBM could easily include additional details about the terms of the contracts that it alleges were breached, as well as specific details about Defendant's misconduct, including the transmittal of internal, proprietary IBM information by Defendant to his JSJ colleagues. IBM is therefore entitled to leave to replead if the Court were to grant Defendant's Motion. See, e.g., Bissinger v. City of New York, No. 06-2325, 2007 WL 2826756, at *1 (S.D.N.Y. Sept. 24, 2007) (granting permission to amend complaint when the proposed amended complaint would expand upon initial allegations and "offer additional facts relevant to Plaintiffs' claims"); S.O. Textiles Co. v. A & E Prods. Group, a Div. of Carlisle Plastics, Inc., 18 F. Supp. 2d 232, 238 (E.D.N.Y. 1998) (granting plaintiff permission to amend complaint to "add an allegation that [plaintiff] has performed all of its obligations" under the contract so that it is entitled to the relief it seeks).

## IV.  DEFENDANT IS NOT ENTITLED TO A STAY OF DISCOVERY.

While arguing that IBM has not adequately pled facts to support its claims that Defendant breached his legal and contractual duties to IBM, Defendant simultaneously seeks to stay any further discovery regarding that misconduct. To date, Defendant has refused to produce a single page of discovery regarding JSJ and has tried to prevent third-party discovery into those

same issues.  Defendant is not entitled to continue his efforts to thwart production of the materials necessary to identify the complete scope of his improper conduct.[7]

It is well settled that "the issuance of a stay [of discovery] is by no means automatic", In re WRT Energy Secs. Litig., No. 96-3610, 1996 WL 580930, at *1 (S.D.N.Y. Oct. 9, 1996), and that "discovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed", Moran v. Flaherty, No. 92-3200, 1992 WL 276913, at *1 (S.D.N.Y. Sept. 25, 1992).  In assessing whether the movant has met that burden, courts consider various factors, including:  "(1) a strong showing, by the defendants, that the plaintiffs' claim lacks merit; (2) the breadth of the discovery demanded and the burden of responding to it; and (3) the risk of unfair prejudice to the plaintiff." Kassover v. UBS A.G., No. 08-2753, 2008 WL 5395942, at *4 (S.D.N.Y. Dec. 19, 2008).  Defendant cannot carry that burden here.

First, "[d]iscovery should be stayed . . . only when there are no factual issues in need of further immediate exploration, and the issues before the Court are purely questions of law that are potentially dispositive." Hachette Distribution, Inc. v. Hudson County News Co., 136 F.R.D. 356, 358 (E.D.N.Y. 1991).  IBM's claims in this case are heavily fact-dependent, and

---

[7] It should be noted that Defendant's request to stay discovery is procedurally defective.  Defendant's motion to stay is governed by Federal Rule of Civil Procedure 26(c).  (Mot. Dis. 16.)  Local Rule 37.2 of the Local Rules of the United States District Court for the Southern District of New York states that "[n]o motion under Rules 26 through 37 inclusive of the Federal Rules of Civil Procedure shall be heard unless counsel for the moving party has first requested an informal conference with the court and such request has either been denied or the discovery dispute has not been resolved as a consequence of such a conference."  Defendant never requested such an informal conference with the Court.  Because the language of Local Rule 37.2 explicitly prevents a party from filing a discovery-related motion prior to requesting an informal conference, Defendant's motion to stay should be denied.  See, e.g., Meadowbrook-Richman, Inc. v. Associated. Fin. Corp., 253 F. Supp. 2d 666, 680 (S.D.N.Y. 2003) ("[B]efore any such discovery motion may be made, [the moving party] must request a discovery conference.  The failure to request such a conference requires that any motion based on the alleged failure to provide interrogatory answers be denied.") (citing Local Rule 37.2); see also Jiggetts v. Allied Barton Sec. Servs., No. 08-4371, 2009 WL 1953418, at *1 (S.D.N.Y. July 7, 2009) (order denying motion to compel, in part for failure to comply with Local Rule 37.2).

Defendant has not raised any pure questions of law in the Motion that could bar the claims against which Defendant has moved.

Second, courts have repeatedly affirmed that a stay of discovery should only be issued when a motion is pending that, if granted, will dismiss substantially all of the claims pending in the action in question. Rivera v. Inc. Vill. of Farmingdale, No. 06-2613, 2007 WL 3047089, at *1 (E.D.N.Y. Oct. 17, 2007) (denying motion to stay discovery because, "while the moving defendant may achieve some level of success, it is doubtful that action will be dismissed in its entirety"); In re Currency Conversion Fee Antitrust Litig., No. MDL 1409, 2002 WL 88278, at *2 (S.D.N.Y. Jan. 22, 2002) (denying stay of discovery because, inter alia, "defendants f[e]ll short of convincing th[e] [c]ourt that . . . the motion will be dispositive of all claims alleged"). Defendant has only sought the dismissal of Counts III and IV.

Indeed, under the broad relevance guidelines of Rule 26(b)(1), the discovery that Defendant seeks to stay is also relevant to claims against which he has not moved. For instance, IBM's allegations that Defendant used IBM's confidential information in an effort to start his own private venture while still employed as one of IBM's most senior and trusted employees support its claims for misappropriation (Count II). Thus, even if the Court were to grant Defendant's Motion, discovery into Defendant's JSJ-related conduct would still be necessary and would be "relevant to [a] party's claim or defense". Fed. R. Civ. P. 26(b)(1).

As described above, Defendant has not made a showing that any, much less all, of IBM's claims against him lack merit. At the very least, the validity of IBM's claims depends heavily on the facts of how Defendant acted in the years leading up to his departure from IBM. Time is of the essence in this matter. Defendant is working for IBM's competitor in a senior

strategy position.  IBM's prosecution of this action necessarily depends on its ability to develop a full factual record of Defendant's prior misconduct, particularly given the incriminating evidence IBM already has uncovered.  There is no good reason to allow Defendant to evade that discovery.

## CONCLUSION

For the reasons set forth above, IBM respectfully requests that the Court deny Defendant's motion to dismiss and to stay discovery.

July 31, 2009

CRAVATH, SWAINE & MOORE LLP

By _____
Evan R. Chesler
(EChesler@Cravath.com)
Stephen S. Madsen
(SMadsen@Cravath.com)
Members of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Plaintiff International
Business Machines Corporation*